WILLIAM F. DEWEY, GUARDIAN, APPELLEE, V. LYMAN W. ALLGIRE ET AL., APPELLANTS.

FILED MAY 4, 1893.    NO. 4717.

1. **Action to Avoid Deed:** INSANITY: PROOF: THE RECORD OF PROCEEDINGS under chapter 40, Compiled Statutes, whereby a person has been adjudged insane and a fit subject for treatment in the hospital for insane, is not admissible for the purpose of proving insanity in an action brought to avoid a conveyance made by such person.

2. ———: REVIEW. IMMATERIAL TESTIMONY: SUFFICIENCY OF EVIDENCE TO JUSTIFY FINDING. A judgment in a case tried without a jury will not be disturbed because of the admission of immaterial testimony, where the testimony properly admitted justifies the finding.

3. ———: INSANITY. While mere imbecility or weakness of mind in a grantor will not, in the absence of fraud, avoid his deed, insanity will do so if of such a character as to induce the conveyance, although such insanity may not amount to a complete dethronement of reason and understanding upon all subjects.

4. ———: ———: BONA FIDE PURCHASER: RETURN OF CONSIDERATION. The deed of an insane person may be avoided as against a grantee without notice of the grantor's insanity, and against an innocent purchaser from such immediate grantee. In the latter case it is not necessary to restore the consideration paid by such purchaser to the immediate grantee.

APPEAL from the district court of Gage county. Heard below before APPELGET, J.

*E. O. Kretsinger* and *T. F. Burke*, for appellants.

*Hazlett, Bates & Le Hane, contra.*

IRVINE, C.

On the 12th day of November, 1889, one John Paulsen, who was then the owner of a farm lying in Gage and Pawnee counties, which had for some years been occupied as a homestead by Paulsen and wife, conveyed said farm to Lyman W. Allgire, Paulsen's wife joining in the conveyance, and received in return certain lots in Blue Springs and in Wymore. On November 20, 1889, Allgire conveyed the undivided one-half of the Paulsen farm to the defendant Mowry. In February, 1890, Paulsen was adjudged insane, and the plaintiff Dewey was appointed his guardian. Dewey, within a few days of his appointment, instituted this action against Allgire, Mowry, and Lena Paulsen, the latter being the wife of John Paulsen, for the purpose of setting aside the conveyance to Allgire upon the ground that Paulsen was insane at the time of its execution. A decree was rendered in accordance with the prayer of the petition, finding all the material facts for the plaintiff, vacating the conveyances from Paulsen and wife to Allgire and from Allgire to Mowry. It appeared in evidence that immediately after the exchange was made Paulsen and wife separated, and conveyances of the Blue Springs and Wymore property were made, whereby what was estimated as one-half in value thereof was conveyed to Lena Paulsen. The decree ordered a reconveyance of all of this property. The case was brought to this court upon appeal by Allgire and Mowry.

The questions involved in the case are discussed in the briefs under a number of heads. For the purposes of this opinion all these questions classify themselves within five topics.

1. Upon the trial, for the purpose of proving the insanity of Paulsen, the records of two proceedings were introduced in evidence, the one in Pawnee county in 1886, and the other in Gage county in 1890. These proceedings were had under sections 17 to 23 of chapter 40 of the Compiled Statutes, and in each case Paulsen was adjudged insane, and a fit subject for custody and treatment in the hospital for the insane. There is considerable discussion in the briefs of the effect of these records as creating presumptions of insanity by reason of the adjudications and commitments, and of sanity by reason of the discharge of Paulsen as recovered. But the appellants raised a broader question by objecting to the introduction of the records in evidence, and in the view we take of that question, all others relating to the records are eliminated from the case. An inspection of the statutes under which these proceedings were had discloses that the sole object of such proceedings is to ascertain whether or not the person alleged to be insane is a fit subject for custody and treatment in the hospital. The proceedings may be *ex parte*. The commissioners are required to take testimony upon the subject, and any citizen of the county, or relative of the person charged, may appear and resist the application, but no notice to any one is required, and the commissioners may, if they see fit, dispense with the presence of the person charged during their proceedings. By section 54 of the same chapter the term "insane" as used in the act is defined to include every species of insanity or mental derangement.

At the common law an inquisition founded upon a commission *de lunatico inquirendo*, resulting in an adjudication of insanity, was held to be in all cases *prima facie* evidence, and sometimes conclusive of the insanity of the person charged. This was upon the ground that such a proceeding was in the nature of one *in rem* to determine the *status* of the party, and was therefore binding upon the

whole world. This proceeding bore a close analogy to the proceedings under our statute whereby guardians are appointed for persons insane. It differs very materially, however, from a proceeding looking toward the custody and treatment of a person in the hospital. In the latter proceeding the examination is more or less *ex parte*, and its object, under the broad definition of insanity before referred to, presents an issue entirely different from that presented in this case, which is, the competency of the party to manage his own affairs and enter into a valid contract. The records of similar proceedings have been held inadmissible in such cases as we are now considering in *Leggate v. Clark*, 111 Mass., 308, and in *Knox v. Haug*, 48 Minn., 58, and we think the reasoning in those cases is sound. In the case of *Wheeler v. State*, 34 O. St., 394, it was held that while such inquisitions were not even *prima facie* evidence of insanity they were admissible as tending to prove the fact; but the authorities cited in the opinion in the latter case are all based upon inquisitions *de lunatico*, and the court seems to have mistaken the distinction between the subjects of inquiry in the two proceedings. We think that these records were improperly admitted in evidence.

This leads us to a consideration of the question whether the evidence, aside from the insanity proceedings, was sufficient to justify the finding of the court, for if it was, the decree should not be disturbed. It has been repeatedly held that error cannot be predicated upon the admission of immaterial testimony in a case tried to the court where the evidence otherwise justifies the finding.

2. Before examining the evidence, however, a question is presented as to the degree of mental incapacity which must exist in order to avoid a conveyance. In the case of *Mulloy v. Ingalls*, 4 Neb., 115, this court held that in the absence of fraud, mere imbecility or weakness of mind in a grantor, however great, will not avoid his deed, unless there be evidence to show a total want of reason or under-

standing. In several other cases this general doctrine has been restated, and it must be taken as the settled law of the state. We think, however, that counsel for the appellants have somewhat mistaken the true import of the language used in these cases. It is very clear that the courts have never meant by such language that a deed will not be set aside unless the grantor, at the time of its execution, showed an absolute want of reason and understanding in every particular. It has been repeatedly held that the deed of one afflicted with monomania may be set aside where the execution of the deed was induced by the disease. The rule, in fact, means this : That one in the possession of his normal faculties, and not afflicted with idiocy or actual insanity, may not in the absence of fraud avoid his deed, even though he be of inferior intellectual capacity ; that the law will not undertake to discriminate between strong and weak minds, except to consider weakness of mind in connection with evidence of fraud ; that the line is drawn at actual insanity inducing to the conveyance—insanity as distinguished from mere weakness of mind unaccompanied by mental disease overthrowing the reason.

3. Measured by this test the evidence is ample to sustain the finding of the trial court. It appears that Paulsen came to Nebraska a number of years ago, bought the farm in controversy, and for several years conducted it in a profitable and apparently skillful manner. In 1886 he became the victim of a delusion to the effect that he constantly carried about with him a man who rode upon his shoulders and controlled all his actions. This was unmistakably an insane delusion which continued to possess him for years. He became sullen and morose, refusing to speak to his neighbors, and forbidding his wife to visit them. In 1889 he suddenly became a religious enthusiast, going many miles alone to church, and in one instance, at least, persisting in remaining in the church throughout the day after the service was concluded. At times he worked industri-

ously; at others, without apparent reason, he refused to work for long intervals of time, spending such periods in the house reading his bible, while his wife did the necessary work upon the farm, and neighbors marketed his stock for him. These occurrences are brought down by the evidence, to and beyond the time of the execution of the deed. Several neighbors testified that, in their opinion, he was, at the time of the execution of the deed, incompetent to manage his affairs, and incapable of understanding the nature of such transactions. These witnesses, while not experts, stated the facts upon which their opinions were based. Such testimony is competent, and its weight was for the trial court to consider. A number of other facts appear in evidence tending to show a deranged mind. The transaction itself is shown by the preponderance of the testimony to be one manifestly to Paulsen's disadvantage. While an adjudication of insanity in proceedings to appoint a guardian has been held not admissible to prove insanity at a period long prior to the inquisition, still we think that the adjudication, whereby the plaintiff was appointed Paulsen's guardian only three months after the disputed conveyance, was sufficiently near in point of time to have some weight as evidence. We are satisfied that the trial judge was justified by the evidence in finding as he did.

4. It is claimed that no decree can be rendered as against the defendant Mowry, for the reason that he was a *bona fide* purchaser from Allgire without notice of Paulsen's insanity. The trial court found that he was not a *bona fide* purchaser, but whether he was or not the deed should be vacated as against him. It is not a question as to whether the deed of an insane person is void or merely voidable. The cases declaring such a deed voidable are those wherein the question was one of affirmance or ratification. While some authorities hold that an executed contract made fairly, and upon adequate consideration, with an insane person, but without notice of his insanity, cannot be rescinded;

and while other authorities hold that a conveyance from an insane person, upon adequate consideration, will not be avoided as against a grantee taking without notice of the insanity without restoring the consideration, we know of no case holding that mere *bona fides* will protect the grantee of an insane person against a bill to set aside the deed where restitution is made. The decree in this case makes complete restitution to Allgire. While this is equitable we do not think it necessary, and as to Mowry, restitution of the purchase money paid by him to Allgire, if any, must rest between those two. It is well said by Thomas, J., in *Gibson v. Soper*, 6 Gray [Mass.], 279, that "To say that an insane man before he can avoid a voidable deed must first put the grantee in *statu quo* would be to say in effect that in a large majority of cases his deed shall not be avoided at all. The more insane the grantor was when the bargain was made, the less likely will he be to retain the fruits of his bargain so as to make restitution. It would be absurd to annul the bargain for the mental incompetency of a party, and yet to require of him to retain and manage the proceeds of his sale so wisely and discreetly that they shall be forthcoming when with restored intellect he shall seek its annulment." The same doctrine is held in other cases, notably that of *Hovey v. Hobson*, 53 Me., 457, and *Crawford v. Scovell*, 94 Pa. St., 48. In the Maine case it was held that the *bona fide* grantee of the grantee of an insane person must rely on the covenants of his deed for restitution, and that it is not necessary that he should be placed in *statu quo* by the plaintiff in a suit to vacate the conveyance.

5. Some argument is based upon the fact that the farm was a homestead, and that Lena Paulsen joined in the conveyance. It was charged in the petition that she did so under duress from her husband. We think the evidence is not sufficient to show duress, but that question is not material. The homestead can only be conveyed by an instrument executed and acknowledged by both husband and

wife. (Comp. Stats., ch. 36, sec. 4.) The instrument in question was not validly executed by the husband for want of mental capacity; the wife's joining did not validate it. Moreover, she was a party to the action, is bound by the decree, and the decree requires her to reconvey all that she has received.

The decree of the district court is right and is

AFFIRMED.

THE other commissioners concur.