PETER GINGRICH, BY CHRISTIAN GINGRICH, HIS GUARDIAN, APPELLANT, V. JAMES B. ROGERS, APPELLEE.

FILED JULY 3, 1903. No. 13,010.

1. **Deed of Insane Person.** The deed of an insane person may be avoided, as against a grantee, for value, without notice of his grantor's insanity. *Dewey v. Allgire,* 37 Neb. 6, followed.

2. **Burden of Proof.** The burden of showing that a conveyance was made by an insane person during an interval of lucidity, is upon the party claiming under the instrument.

3. **Ratification.** Neither the county court, nor a person under guardianship because of insanity, nor the guardian of the latter, nor all together, can ratify or confirm a conveyance of lands by the ward made previous to the guardianship but while he was insane.

APPEAL from the district court for Hamilton county: BENJAMIN F. GOOD, DISTRICT JUDGE. *Reversed with directions.*

*John A. Whitmore* and *O. A. Abbott,* for appellant.

*Eugene J. Hainer* and *Jerome H. Smith,* contra.

AMES, C.

From the briefs and arguments of counsel, we are led to believe that it is not controverted that the record establishes, by substantially uncontradicted evidence, that Peter Gingrich was and had been, for more than a year immediately prior to the happening of the transaction which is the subject of this investigation, mentally insane to a degree incapacitating him for the transaction of business. Our own opinion of the evidence directs us to the same conclusion, but under the circumstances of the case a discussion of it seems to be uncalled for. On July 12, 1898, he conveyed a farm, of which he was the owner, to the appellee Rogers, for a gross consideration including a mortgage lien, assumed by the purchaser, of about $3,370. A preponderance of the evidence is to the effect that this price was, if not adequate to the then value of the land, at least, not so widely inadequate thereto, as to be indicative of fraud or undue means, and the trial court would have been abundantly justified, by the evidence, in finding especially that the purchaser was ignorant of the mental incapacity of his vendor. For some time prior to this date, however, Peter had been offering to sell the property at a price of $3,800 or $4,000, and his brothers Christian Ging-

rich and another had proposed to pay him therefor $5,500, and to enter into obligations for a conveyance of it to him at any time upon demand, upon a return of the purchase price and interest at the rate of six per cent. per annum, and this offer we infer to have been subsisting at the date of the sale.

In the month of September, following the conveyance, Peter was taken into custody by the board of commissioners of insanity, and committed by them for treatment to the hospital for the insane at Lincoln, and on the 22d day of November, in the same year, Christian Gingrich was by the county court of the proper county duly appointed the guardian of Peter and his estate, and duly qualified as such. Within three or four weeks after his appointment, the guardian offered to refund to Rogers the purchase price of the land, with lawful interest, and to pay him the value of improvements put upon the place by the latter, and demanded a conveyance to his ward, but met with a refusal. Rogers, however, avers that he offered to reconvey, if reimbursed his expenditures to a slightly larger amount, and with the highest legal rate of interest, but that his offer was declined by the guardian. It is not contended that, during any of the times hitherto mentioned, Peter's mental capacity had been permanently restored to him; nor has he since been relieved from guardianship, although he has been set at large from the custody of the hospital for the insane.

This action was begun by the guardian on the 25th day of April, 1901, to compel the appellee Rogers to accept the above mentioned offer and reconvey the lands to the ward. Thus far, this case is in all important particulars identical with that of *Dewey v. Allgire,* 37 Neb. 6, which establishes both that the guardian has capacity to sue, and that he is entitled to recover upon the facts stated. But the appellee seeks to distinguish this case in two particulars. The answer, although admitting the guardianship, denies the insanity, generally, and alleges specifically that on the date of the sale, July 12, 1898, Peter was of sound mind and

37

capable of transacting the business in question. In argument, counsel supports this allegation by saying that on that day no one testifies to having seen the vendor, except the appellee and a real estate agent, who negotiated the sale, neither of whom saw anything in his conduct which led him to suspect his sanity, and that no one testifies to having observed any such conduct during the entire month of July, hence it is contended that, although he may have been insane both before and after that time, it may have been that on the day of the sale he was enjoying a lucid interval. The fact that he conveyed, for $3,370, property for which he appears to have had a continuing offer of $5,500, is not significant in support of this contention and, besides, it having been shown, as we said, by apparently indisputable testimony, that he had been continuously insane, both for several months previously, and for at least as great a length of time subsequently, we think both the natural and legal presumptions are, that his mental incapacity throughout the period was uninterrupted, and that the burden of proving a lucid interval by clear and satisfactory evidence is upon an interested party claiming an advantage by reason of it. We do not think that this requirement has been met.

An attempt is also made to distinguish this case from *Dewey v. Allgire, supra,* by the contention that the sale in question was ratified, or at least acquiesced in, for such a length of time as amounted to an affirmance of it. The mental incapacity of the vendor continued uninterruptedly from the date of the conveyance until the 22d day of November following, when his affairs were put in the hands of a guardian who has not since been discharged from his trust. Whether, since the latter date, he has recovered the normal use of his mental faculties, is much disputed in the record, but in our opinion is immaterial. If he has done so his legal status has remained unchanged. Counsel for the appellee cites us to no authority, and offers no argument for holding that a person under guardianship can enter into contracts or make conveyances, although act-

ually of sufficient natural capacity so to do.  Manifestly such a rule would lead to inextricable confusion and would, in practical effect, annul the office and powers of a guardian, and it follows, of necessity, that the ward can lawfully ratify or affirm no contract or conveyance which he is legally incapacitated for making.  The principal, if not the only, argument seriously urged by counsel in support of the claim of ratification, is based upon other grounds. At the time the land was conveyed to Rogers, he gave, in part payment therefor and as directed by his vendor, a bank check for $215, payable to the order of the real estate agent, out of which the former received $100, which he deposited in a bank, and for which he received a certificate of deposit payable to his own order; and further, in part payment, Rogers executed his bank check for $1,413, payable to the order of Peter, and delivered it to him.  The guardian, upon his appointment, found both of these latter mentioned papers in the possession of his ward.  In his petition to the county court, praying his appointment as guardian, he represented the estate of Peter as consisting of these documents, and also of an interest in real estate of the value of $1,000, having reference to the land now in dispute.  After an inquiry the county court was of opinion and found that the estate consisted of "notes, certificates of deposit and checks of the probable value of $1,550." The guardian, shortly thereafter, demanded and received payment of these instruments and deposited the proceeds thereof in various banks, receiving in lieu thereof interest bearing certificates, payable to his own order, in his official character.  Subsequently, he expended some $450 of these funds for the maintenance and benefit of his ward. Counsel for the appellee insists that these transactions amounted to a ratification by the guardian and county court, or what amounts to practically the same thing, to an election to enforce the collection of the securities given as payment for the land, and to abandon any claim or right to rescission.  Here, again, counsel fails to cite us any authority upholding the right or power of the guard-

ian or county court to make such an election, and it would be manifestly an extremely objectionable public policy which should vest such a discretion in either, or both. Untrammeled as it would be, if it should exist at all, it might frequently be employed by incompetent or dishonest officials to the detriment and destruction of the ward's estate, and once having been exercised it would, as counsel rightly contends, be irrevocable. We are cited to section 27 of chapter 34, Compiled Statutes (Annotated Statutes, 5397), as expressly conferring this power upon county courts; but it is quite evident, from the most cursory reading, that the legislature, in enacting that section, did not have in mind the subject here adverted to. When it is said by the authorities that courts of equity may exercise the right of election in such cases no more is meant than that those courts are the universal guardians of all persons under disabilities, and will see to it, when properly appealed to, that their estates are conserved, so far as is consistent with the general rules of law and with good conscience. They would be shorn of a most beneficial part of their jurisdiction, if their freedom of action could be hampered or taken away, at the discretion of the very officials and trustees whose conduct is frequently the subject of investigation by them, whose transactions it is their province to supervise and control, and whose nonfeasances and misfeasances they are required to remedy.

The district court found generally for the defendant and dismissed the action. In our opinion, the judgment is unsupported by the evidence, but, if the appellee is to be reimbursed his purchase price with interest, he should, equitably, be called upon to account for the value of the use and occupation of the premises during his possession of them, as well since as before the trial.

It is recommended that the judgment of the district court be reversed, and that the cause be remanded for a further accounting, and for the entry of a decree in accordance with the prayer of the petition and this opinion.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed, and that the cause be remanded for a further accounting, and for the entry of a decree in accordance with the prayer of the petition and this opinion.

REVERSED.