DAVIS v. BURKHOLDER et ux. (No. 1601.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 28, 1920. Rehearing Denied March 10, 1920.)

1. ACKNOWLEDGMENT ⬦⟳55(2)—DOES NOT ESTOP MARRIED WOMAN FROM DENYING TERMS OF LEASE.

A married woman is not estopped by the certificate of a notary to deny her want of knowledge of the terms of a lease which she was led to believe by the grantee and notary was different from the one actually signed and different from the one she had agreed to make.

2. APPEAL AND ERROR ⬦⟳1050(1)—ERROR IN ADMISSION OF EVIDENCE HARMLESS WHERE SIMILAR EVIDENCE WAS ADMITTED WITHOUT OBJECTION.

Where evidence admitted without objection assails the verity of certificate of agreement to lease as strongly as does that to which objection was reserved, error, if any, in admitting testimony objected to is harmless.

3. CANCELLATION OF INSTRUMENTS ⬦⟳37(4)—OFFER TO RETURN PAYMENT MADE SHOULD BE ALLEGED IN SUIT BY LESSOR TO CANCEL OIL LEASE.

In action by lessors to cancel oil lease, if petition specifically alleged payment of consideration, plaintiffs should have alleged an offer or tender to return payment made before suit or alleged an excuse for not making tender.

4. MINES AND MINERALS ⬦⟳59—FAILURE TO TENDER CONSIDERATION DOES NOT DEFEAT RESCISSION.

A failure to make tender of consideration paid will not necessarily defeat rescission of an oil lease, but requires the cost to be charged to plaintiff up to the time of the tender.

5. PLEADING ⬦⟳34(3)—WILL BE CONSTRUED FAVORABLY UNDER GENERAL EXCEPTION.

Every reasonable intendment will be indulged in favor of the petition under general exception.

6. PLEADING ⬦⟳406(5)—FAILURE TO OFFER TO DO EQUITY WAIVED BY GOING TO TRIAL WITHOUT OBJECTION.

An omission of the offer to do equity or to make restitution of what the complainant has received does not go to the sufficiency of the bill to state a cause of action, but must be taken advantage of by answer or demurrer, and the defect is waived if the defendant goes to trial without objection on this ground.

7. APPEAL AND ERROR ⬦⟳931(6) — NO PRESUMPTION THAT IMMATERIAL EVIDENCE INFLUENCED TRIAL COURT.

Where case was tried before court without a jury, the court on appeal will not presume that immaterial evidence admitted influenced the trial court's judgment; the finding of facts showing that judgment was based on other facts.

8. CANCELLATION OF INSTRUMENTS ⬦⟳18 — FAILURE TO READ LEASE DOES NOT BAR RIGHT.

Where plaintiffs by false representations of defendant and notary who took acknowledgment to lease sought to be canceled were induced to sign a contract which in fact they never made, that plaintiffs, who relied upon the integrity of defendant and notary, signed lease without reading it, is not such negligence as will deprive them of equitable relief.

Appeal from District Court, Donley County; Henry S. Bishop, Judge.

Suit by C. C. Burkholder and wife against Chas. Spencer. Spencer disclaimed, and by agreement and permission of the court J. W. Davis was substituted as party defendant. Judgment for plaintiffs, and Davis appeals. Affirmed.

Benson & Benson, of Bowie, Taylor, Allen & Taylor, of Henrietta, and E. A. Simpson, of Amarillo, for appellant.

A. T. Cole, of Clarendon, for appellees.

HUFF, C. J. The appellees, C. C. and Amo Burkholder, sued to cancel an oil lease on 120 acres of land, purporting to have been executed by them to Charlie Spencer, the named lessee therein, on the 18th day of March, 1919. The suit was originally brought against Spencer, who disclaimed, and by agreement and permission of the court Davis, the appellant, was substituted as party defendant. The case was tried before the court without a jury, and upon proper request the trial court filed findings of fact, which we believe will sufficiently present the issues without the necessity of setting out the pleadings further at this time. The facts in the case are sufficient to sustain the court's findings, which are as follows:

"The court finds that the defendant, J. W. Davis, sought plaintiffs, husband and wife, to lease from them their homestead in Donley county, Tex., for oil and gas; that said defendant presented to plaintiff a printed form for a contract for such lease, which being filled out by defendant, Davis, and W. C. Hoggard, notary public, was signed and acknowledged by plaintiffs before said notary public; that neither of said plaintiffs read the said contract either before or after it was signed and acknowledged, and that they depended on said defendant Davis' representations as to the contents; that said defendant Davis told and represented to plaintiff that said instrument was a lease contract for said homestead land to J. W. Davis, and not to Charlie Spencer; that said defendant Davis represented to plaintiff that said contract was for a three-year lease term; that is, that it was to run for a period not exceeding three years and was to expire in six months after date thereof unless on or before the expiration of said six months' period the defendant Davis should drill or cause to be drilled a prospect well on such place and make semiannual payment of $50 for six months'

extension thereof, and that thereafter the renewal payment should be $50, payable semiannually until the expiration of a period of three years from date of lease contract. The court finds that the defendant, J. W. Davis, read or pretended to read to plaintiffs the said contract executed by them before they signed it, and that in doing so he represented to them that it was in terms and words substantially as above set forth. The court finds that defendant Davis was experienced in obtaining oil and gas leases and in the sale of capital stock of oil and gas developing companies, and that the plaintiffs were inexperienced in such matters, and that this was their first venture in the oil and gas leasing business; that the defendant, J. W. Davis, was familiar and well acquainted with the contents of the printed form of contract which he presented to plaintiffs to execute and with the contract, after its execution and acknowledgment; that plaintiffs were not familiar or acquainted with the contents of the blank form of contract presented to them by defendant Davis for execution nor with the contract after its execution and acknowledgment; and that plaintiff would not have executed said lease contract except for the representations of defendant, J. W. Davis, as above found. The court finds that the lease contract which was in fact executed by plaintiff is the one alleged by plaintiff to have been recorded in the deed records of Donley county, Tex., and introduced in evidence; that said contract was on its face a lease of the plaintiffs' 120-acre homestead to Charlie Spencer; that said lease contract was to run for a period of not exceeding ten years; that it was to become void unless drilling should commence within one year from date thereof or unless a payment of $50 should be made to plaintiff before the expiration of one year from date of said lease contract, and that such payment would extend the lease for another twelve months; that such lease might again be extended by successive annual payments for a period of ten years from that date. The court finds that the plaintiff did not intend to sign the instrument which they in fact did sign, and that they were induced to do so by the above misstatements and misrepresentations and acts of the defendant, J. W. Davis, knowingly and intentionally used by the defendant, Davis, for the purpose of obtaining the lease. The court finds from the testimony of plaintiff Amo Burkholder that she understood the lease contract as first above set out, and that the same was thus explained to her in her privy examination by W. C. Hoggard, notary public. The court finds that the plaintiffs were not negligent in relying upon and believing the representations of the defendant, J. W. Davis, and that the [plaintiff] defendant Amo Burkholder was not negligent in relying upon and believing the explanation of the instrument by the notary public to her; that the lease was for the defendant, Davis, for three years, with semiannual payments, and that neither of plaintiffs would have executed said instrument if they had known it was a lease to Charlie Spencer; that it was for a period of ten years; and that the renewal payments were to be annual instead of semiannual."

The first assignment presented is to the effect that the court erred in permitting Hoggard to impeach his own certificate of acknowledgment to the instrument sought to be canceled, made by Mrs. Burkholder, for the reason the evidence varies the written acknowledgment. W. C. Hoggard was the notary public who took the acknowledgment of C. C. and Amo Burkholder, husband and wife, to the lease. The certificate for married women as required by the statute was used in taking the wife's acknowledgment. The testimony objected to as set out in the bill is substantially that Hoggard was the notary public before whom the instrument was acknowledged. The question and answer objected to are:

"Q. When you took her acknowledgment, did you explain it to her (referring to the lease contract)? A. Yes, sir; I explained it to her as Mr. Davis had explained it to me, but I didn't read it over—the instrument—to her. I only took Mr. Davis' word for what was in it."

The objections urged at the time were that the testimony attempted to vary a valid written instrument, the notary's certificate of acknowledgment by parol testimony, and was an impeachment by parol of the prior official acts of the witness. The witness also testified, to which no complaint was made, by exception, that he heard Davis talking to the appellees about the lease, and he said it would run three years; that he (Hoggard) explained to Mrs. Burkholder explicitly and told her it would run three years, and after he made that explanation she signed the three-year lease. He further testified what he meant by explaining it to her was that he did not read it over to her, but that he explained to her it was a three-year lease, and not a deed. He was examined particularly with reference to certain clauses in the lease and whether he read or explained them. He designated some which he did read and some he did not. As an illustration of the examination of this witness, we take the following:

"I stopped and didn't read that part of it which says, 'In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively during the entire ten-year term of this lease.' I stopped before I got to it. I thought it might work against the man. I thought it might work against Davis getting the lease, I thought, to read further."

With reference to this clause he stated at another place:

"I thought that was against Davis, and I wanted Davis to get the lease, and I cut short of that. You ask me if I was colluding with Davis. I will say that I wanted him to get the lease. I was doing what I could. I do not come here now and tell this court that her acknowledgment is false. I signed the certificate; that is a true certificate of mine, but I told

you I never read that lease, only just a certain part of it where you read just now."

This witness also testified he had not found out that it was for a longer term than three years until apparently while he was being examined. The habendum clause, was not read, in which it is stipulated the lessee is to have and to hold for a term of ten years. While the witness read some clauses of the lease, he read no clause giving the length of time it was to run, but explained to Mrs. Burkholder that it was a three-year term with a payment of $50 semiannually. In addition to the statement of the issues, as made by the pleadings, we desire to say it was also alleged in the petition substantially that Mrs. Burkholder's acknowledgment was taken by Hoggard, the notary; that in the privy examination he explained to her that the lease was to continue for three years and no more; that the payments were to be made semiannually; that, but for her reliance upon his reading and pretended reading and explanation by him, she would not have acknowledged it as her separate act and deed and would not have stated she did not wish to retract it. It is also alleged that the appellees relied upon the honor and integrity of Davis; that he stated the contents of the lease as to the drilling, its duration, and the semiannual payments, and they were induced thereby to sign the same; that Hoggard came with Davis to their home, and that the statements were made in his presence and hearing; that they trusted him, as he was the justice of peace of that precinct, in whom they had confidence and who possessed the confidence of his neighbors. They believed he knew the contents of the lease and would not misstate them to Mrs. Burkholder.

[1, 2] The facts as alleged constituted a fraud in obtaining the execution and acknowledgment of an instrument never in fact made or intended to be made. Our courts hold that it is settled in this state that the certificate of the officer taking the acknowledgment of a married woman is conclusive of the facts therein stated, unless fraud or misrepresentation is alleged. The rule as to its conclusiveness has application only in those cases where the proper execution of the deed itself is in question. This is a suit to cancel the lease that Davis procured by fraud and deceit. In no manner did this action call in question the proper execution of the lease. We do not think it can be said a married woman is estopped by the certificate of a notary to deny her want of knowledge of the terms of a lease which she was led to believe by the grantee and notary was different from the one actually signed and different from the one she had agreed to make. She never leased or agreed to lease the land for ten years, and Davis and the notary both knew she did not, as shown by the evidence above quoted. Oar v. Davis et al., 105 Tex. 479, 151 S. W. 794; Id., 135 S. W. 710; Cole v. Bammel, 62 Tex. 108; Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677; Stringfellow v. Brazelton, 142 S. W. 937. The evidence admitted without objection assails the verity of the certificate as strongly as does that to which objection was reserved. This, we think, renders the error, if any, in admitting the testimony objected to immaterial or harmless.

[3-5] The second assignment asserts fundamental error in that the petition was subject to general demurrer because it sought to rescind the lease without offering to refund to Davis the $50 purchase money admitted to have been paid; that this matter was called to the attention of the court before the rendition of the judgment. The appellant doubtless refers to his motion for new trial, as there is no exception to the petition nor a plea to that effect. It is the rule that, since the prime object in an action for rescission is to undo the original transaction and restore the parties as near as may be to their former condition, the plaintiff in his petition must offer to restore the consideration paid him under the contract. In this case the petition does not allege or show that the $50 was actually paid to the plaintiffs, and to hold that it does would be rather a strained construction. At most, we think it shows there was an agreement to pay $50, and that the written instrument provided for the payment of $50. It appears from the evidence, however, it was actually paid. If the petition specifically alleged such payment, then the plaintiff should have alleged an offer or tender before suit and have kept the tender good by a continued offer or must have alleged an excuse for not making the tender. As a condition precedent to bringing the suit a tender is not a necessary requisite to be made, and it appears that a failure to do so, will not necessarily defeat a rescission, but would require the cost to be charged to the plaintiff up to the time of the tender. Black on Rescission & Cancellation, vol. 2, § 625, p. 1443. If there was no payment of the agreed sum as might have been inferred from the petition in this case, no offer was required, and every reasonable intendment will be indulged in favor of the petition under general exception.

[6] "It is also held that an omission of the offer to do equity or to make restitution of what the complainant has received does not go to the sufficiency of the bill to state a cause of action, but must be taken advantage of by answer or demurrer and the defect is waived if the defendant goes to trial without objection on this ground." Black on Rescission & Cancellation, vol. 2, § 672, p. 1526; Williams v. Wright, 20 Tex. 503. The appellant neither excepted to the petition on the ground here assigned nor pleaded in answer

payment of the consideration. In fact, the lease was made to Charlie Spencer, evidently at the instance of Davis, and suit was brought originally against Spencer, who during the pendency of the suit assigned the lease to Davis for $10. Spencer filed his disclaimer herein, and Davis asked to be substituted as the defendant, and by agreement of the parties, with the permission of the court, he was accorded that privilege. Black on Rescission & Cancellation, § 624, at page 1440, vol. 2, says:

"But on a bill to cancel a deed it is not necessary for the plaintiff to restore to a purchaser from the original grantee the consideration paid by such purchaser to his grantor"—citing in the note thereto, in support of the text, the case of Dewcy v. Allgire, 37 Neb. 6, 55 N. W. 276, 40 Am. St. Rep. 468, which appears to support the proposition.

Davis shows no ground upon which he is entitled to the consideration paid by Spencer, who has disclaimed any interest in the lease and who assigned his interest after the institution of this proceeding against him. By what right Davis claims the consideration paid by Spencer is not shown in the record. Spencer admitted he had no right when he disclaimed. There is no transfer of the consideration, and nothing to negative the inference of the satisfaction of Spencer for the sum received. The payment of this money rested between Davis and Spencer, and in our opinion does not affect the equities between Davis and appellees.

[7] The third and fourth assignments urge there was reversible error in requiring the appellant to testify as to his intention with reference to drilling a well on the land and stating in substance that he did not intend to do so and did not know whether Spencer could have done so, and in refusing to strike out the evidence because it is asserted the evidence was irrelevant and immaterial, and no allegation in the petition seeking rescission on the ground that the witness or Spencer did not intend to drill. The case was tried before the court without a jury. We will not presume such evidence influenced the trial court's judgment; in fact, the court's findings of fact show that the judgment was based on other facts and upon which it rests. However, we can see no useful purpose subserved by either the trial court or counsel for appellee in incumbering the record with immaterial matters, and it is not to be commended.

[8] The fifth assignment is to the effect the judgment is not supported by the pleadings and evidence; that the misrepresentations were concerning a written instrument signed

by the appellees; and that under the law they were required to read and acquaint themselves with its contents before signing. This action was to cancel a contract in fact never made. The appellees allege and prove they relied upon the honor and integrity of Davis and the notary, and did not read the instrument because of such confidence, and that such parties made false representations, which were in accordance with the verbal agreement, and by such representations induced them to execute the lease. It is established, we think, that a party ought not to profit by his own fraudulent representations or obtain relief from its consequences because the one deceived could have learned of the fraud if he had been diligent. It has been frequently said, if the representations were of such character as to induce the complaining party to rely on them, and he believed them to be true, this would be sufficient for relief, though he may by investigation have discovered the truth. It does not lie in the mouth of the appellants to assert that by reading the instrument appellees would have ascertained that the statements made by Davis and the notary as to the term and semiannual payments were false. The representations were made to induce the signing of the instrument without reading it. Having accomplished the design, it comes with poor grace to now assert diligence would have discovered the fraud which appellees' confidence in the perpetrators disarmed of vigilance. Conn v. Hagan, 93 Tex. 334, 55 S. W. 323; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 811; Railway Co. v. Winters, 193 S. W. at page 369; Taber v. Eyler, 162 S. W. 490. The appellant would be correct if the failure to read the instrument was unexplained, but, when the parties were misled by false representations by the other party and caused thereby to sign the instrument without reading it, this does not constitute such negligence as will deprive the maker of equitable relief.

The sixth assignment is to the action of the court in admitting the oral testimony of appellees concerning the terms of the contract, because, it is asserted, it is sought thereby to vary the terms of a written contract. This assignment is overruled for the reasons heretofore given and on the authorities cited. Also see Chatham v. Jones, 69 Tex. 744, 7 S. W. 600.

The seventh assignment is overruled for the reason and on the authorities given under the first assignment. We here also cite Davis v. Van Wie, 30 S. W. 492.

The judgment will be affirmed.