ADOLPH ACHATZ ET AL., APPELLANTS, V. FRED A. BAILEY, APPELLEE.

FILED MARCH 28, 1922. No. 21986.

Evidence examined, and found to sustain the decree of the trial court.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Gray & Brumbaugh* and *Macfarland & Macfarland,* for appellants.

*Sullivan & Thummel* and *T. J. McGuire, contra.*

Heard before MORRISSEY, C. J., ROSE and ALDRICH, JJ., RAPER and STEWART, District Judges.

STEWART, District Judge.

Suit by heirs of Anna Achatz, deceased, to cancel a contract for sale of real estate because of alleged weak mental condition of the seller at the time of the execution of the contract. The court dismissed plaintiff's petition and quieted title in the defendant, upon his paying into court for the plaintiffs $7,500. Plaintiffs appeal.

On August 5, 1919, Anna Achatz, a widow, entered into a written contract with the defendant, for the sale of lot 19, Keystone Park, Douglas county, Nebraska, comprising 10.76 acres, with improvements, consisting of a seven-room house and outbuildings, for $8,500. An earnest payment was made to her of $1,000, and the remainder was to be paid on or before April 1, 1920, upon delivery of an abstract of title and possession of the premises; but, in event of her death prior to April 1, defendant was to pay the $7,500 in equal amounts to her five children. Time was made an essential element of the contract, which provided

for liquidated damages of $1,000 from the defaulting party. Anna Achatz died September 15, 1919. Suit was commenced March 27, 1920, tendering repayment of $1,000 and interest thereon, and praying for annulment of said contract.

Plaintiffs' testimony tends to show they are the children and only heirs of said Anna Achatz; that two of them, with a son-in-law, resided with her; that she was about 49 years of age, and during the year 1919 she was afflicted with a cancer; that in June, 1919, she consulted doctors, one of whom prescribed the use of one-tenth grain morphine tablets, when necessary, to allay pain; that she was told by her doctor she had but a short time to live; that she was a strong-minded woman, owning two rental properties, who managed her own business affairs until about two months before her death; that, as her ailment progressed, her use of morphine tablets increased from two to three in 24 hours to about that number each hour; that about August 1, 1919, she went to a hospital for about five weeks, and until about two weeks before her death; that she was restless, nervous and in pain when not under the influence of a narcotic; that at times she imagined that she saw objects floating about the room in the air, and was forgetful of visits of friends, and of subjects she was discussing; that she was rational when not under the influence of morphine; that in June, 1919, she visited the real estate office of the defendant concerning the sale of said lot 19, and declined his offer therefor of $8,500; that about one year prior thereto defendant had offered $8,000 for said lot; that soon after going to the hospital she asked her daughter to telephone defendant that she wished to see him the following morning; that the next day she told her daughter the defendant had called and made a contract, and to take it, and the $1,000 check, and deposit in the bank $500 to the credit of the minor son, John, pay a $50 debt she owed said daughter, and to deposit $450 in her own account; that said daughter disposed of the $1,000

as directed by her mother; and that the value of said lot 19 was about $14,500.

Defendant's testimony tended to show that about one year prior thereto he was offered said lot for $9,000 and was willing to pay but $8,000; that in June, 1919, Mrs. Achatz, with members of her family, called at his office to sell said property, but declined an offer then made by him of $8,500; that about August 1, 1919, her daughter, Mrs. Hill, telephoned defendant that if he still wanted the property at $8,500 to call at the hospital and see her mother; that defendant called on Mrs. Achatz, who, in the presence of three of her children, agreed to sell the property for $8,500, payable, $1,000 at date of contract, and the remainder by April 1, 1920, but, in the event of her death, the remainder was to be paid in equal parts to her five children; that the next morning he prepared a written contract, which was duly executed by the parties before a notary public, in the presence of one of her daughters, and delivered his check for $1,000; that at all times in question her mind was bright and showed no evidence of being affected by any narcotic; and that the market value of said lot was about $8,000.

Other testimony was adduced bearing upon the matter of rescission and ratification, which, in view of our conclusions, it is unnecessary to consider.

This case involves no issue of fraud or undue influence. In order to avoid the contract in question, it is not necessary to prove either, if the insanity of the seller, at the time of its execution, is established. *Dewey v. Allgire,* 37 Neb. 6; *Wager v. Wagoner,* 53 Neb. 511.

The evidence clearly shows that Mrs. Achatz understood what she was doing, and consciously and voluntarily entered into the contract. There is no suggestion in the record that she ever had any taint of insanity, other than the occasional effect of morphine during her last illness. No unusual effects of the drug are shown. It was taken at will by her to deaden pain and to induce sleep. A continuous state of slumber will not be presumed from a

showing that it followed at different times the use of mor-
phine. Mrs. Achatz was aware of all the conditions of the
contract on the part of the defendant before he responded
to her request to call at the hospital. She knew the lot
he wanted to purchase, the price he was willing to pay,
and that it was a cash transaction.

Mrs. Achatz was conscious of her impending death when
she directed by said contract the distribution of $7,500
equally among her children, the gift of $500 to her minor
son, the payment of a $50 debt to her daughter, and the de-
posit of the remainder of the $1,000 payment to her own
credit. The contract seems to reflect her wishes at a cru-
cial moment upon most solemn and serious affairs.

The mental soundness of the deceased is established by
the evidence, and the decree of the trial court is

AFFIRMED.