## STEPHENS v. REIK. (No. 1384.)

(Court of Civil Appeals of Texas. El Paso.
Jan. 4, 1923.)

1. **Vendor and purchaser ⊚⟹296—Vendor may sue in trespass to try title on purchaser's default.**

On failure of vendee to pay purchase-price notes at maturity, *held*, that vendor could sue in trespass to try title.

2. **Vendor and purchaser ⊚⟹97 — Tender of paid and unpaid notes held not condition precedent to suit to rescind contract.**

A tender of the paid and unpaid notes executed by the vendee is not a condition precedent to the bringing of a suit by a vendor to cancel or rescind a contract for the sale of land.

3. **Tender ⊚⟹13(1)—Offer to pay indebtedness on land held not equivalent to tender of payment.**

Vendee's testimony, in an action against him by the vendor to recover the land, that "I stand ready now to pay these liens, provided I can get the proper credit on the notes now matured," *held* not equivalent to an offer or tender of money to discharge the indebtedness on the land or the purchase-price notes. It was not sufficient simply to say conditionally what he was ready and willing to do, but it became necessary to avail himself of the rights which the law and his contract gave him by then tendering his money to discharge the indebtedness and notes, then due.

4. **Judgment ⊚⟹253(1)—Amount of judgment on contract providing payments to be considered rent until contract paid held not erroneous under the evidence.**

Where a land contract provided that money paid on the purchase-price notes should be considered merely as rental of the property while in possession of the purchaser, until the contract was paid, a judgment of rent for $500, of which plaintiff remitted $250. was not erroneous, where defendant was in possession of the land for 13 months, and the lowest rental value estimated was $35 a month.

5. **Vendor and purchaser ⊚⟹97—Refund of payments made and value of improvements made by vendee executory under land contract held not condition precedent to rescission by vendor.**

In case of an executory contract for sale of land, where the vendor has done nothing to waive his right to recover the land, and the vendee makes default in the payment of the purchase money, the facts that the vendee has paid part of the purchase money and made valuable improvements, coupled with possession of the property, unaided by some other equity, will not entitle him to recover the purchase money paid or the value of the improvements made, hence a tender to the vendee of the money he has paid on the purchase price, and the value of permanent improvements made by him on the property, is not a condition precedent to rescission.

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Ward County; Chas. Gibbs, Judge.

Action by R. W. Reik against W. R. Stephens. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. B. Howard and H. G. Russell, both of Pecos, for appellant.

Birge Holt, of Barstow, for appellee.

WALTHALL, J. This was an action of trespass to try title which was brought by R. W. Reik, appellee, against W. R. Stephens and D. L. Stallings, and in which judgment was rendered in favor of appellee. The property involved is lots 5 and 6 in block 81 of the town of Barstow. Stallings was dismissed on his answer of disclaimer. Stephens answered by general demurrer, general denial, plea of not guilty, and pleaded the provisions of the following contract:

"The State of Texas, County of Ward.

"Know all men by these presents: This agreement and contract, made and entered into on this the 27th day of February, A. D. 1920, by and between R. W. Reik, of the county of Denton, state of Texas, hereinafter called party of the first part, and D. L. Stallings and Roy Stephens, of Ward county, Texas, hereinafter called parties of the second part, witnesseth:

"(1) Party of the first part hereby sells under this contract to parties of the second part, the following described property, to wit: Lots numbers five (5) and six (6) in block number eighty-one (81), in the town of Barstow, Ward county, Texas, according to the map of the plat of said town on record in Book 1, page 549, Deed Records of said county; also the building thereon situated, and all tools and machinery now situated and contained on said premises and in said building which belong to the party of the first part, together with all the good will of the garage and repair business conducted and carried on in said building and on said premises, the consideration moving the party of the first part being the sum of two thousand ($2,000.00) dollars, which said sum is paid to party of first part, and secured to be paid by parties of the second part as follows, to wit: One hundred fifty and no/100 ($150.00) cash in hand paid, the receipt of which is hereby fully acknowledged, and the balance evidenced by eleven promissory notes all of even date dated at Barstow, Texas, February 27, 1920, and bearing interest from date until paid at the rate of 10% per annum, and providing that failure to pay one note shall mature all notes at option of holder of same, and providing that the interest on each note being due and payable at the maturity of the note, said notes being described as follows, to wit: The first nine of said notes, being in the sum of one hundred fifty and no/100 ($150.00) each, one of the above-described notes due each three months after date, respectively, the first of said notes being due on the 1st day of June, 1920, and one of each of the other eight becoming due on the 1st day of each third month thereafter. One note in the sum of one hundred dollars ($100.00), bearing date February 27,

1920, bearing interest from date at the rate of 10% per annum from date until paid, and due on the 1st day of July, 1922. One note in the sum of four hundred dollars ($400.00), dated at Barstow, Texas, February 27, 1920, bearing interest at the rate of 10% per annum from date until paid, and providing for the usual collection clauses, due November 1, 1922.

"(2) Party of the first part hereby agrees and binds himself, his heirs, executors, administrators, and assigns, to convey to the parties of the second part, their heirs or assigns, when all of the above-described notes are paid in full, together with all interest thereon, by a good and sufficient warranty deed to the property above described, the title to same to be a good and merchantable title, and the conveyance to be made free and clear of all incumbrances, whatsoever, except taxes accruing from the date of this instrument.

"(3) Parties of the second part hereby agree and bind themselves to pay the notes above described at the time specified; if any of said notes shall remain in default for a period of over 30 days, they will on demand surrender peaceable possession of above-described property and premises to holder of said note; and any sum or sums of money paid on said notes shall be considered merely as rental for said property while in possession of the parties of the second part.

"(4) Party of the first part hereby agrees that he will not further incumber said property during the life of this contract, and further agrees that if it becomes necessary for the parties of the second part to pay out any sum or sums of money in order to protect themselves against any incumbrance that already exists against the said property, that such sum or sums shall be credited on the first of said notes maturing.

"(5) Parties of the second part agree that they will not remove or permit to be removed from said premises anything of value covered by this contract until such time as at least half of said notes have been paid off, and that this contract shall and does have the force and effect of a chattel mortgage, in so far as any property covered hereby is concerned.

"(6) It is mutually agreed by and between all parties hereto that this contract shall extend to and bind the heirs, executors, administrators, and assigns and legal representatives of all parties hereto, as well as the parties themselves.

"Witness the execution hereof, by the parties hereto, at Barstow, Texas, the day and year first above written.

                    "R. W. Reik.
                    "D. L. Stallings.
                    "W. R. Shephens."

Appellant alleged the payment of $150, the cash mentioned in the contract, and the first maturing four notes; that the first note, when paid, was delivered by appellee to appellant, but that appellee failed and refused to deliver to him or to cancel the other notes when paid, to his damage $495, the amount of the notes and interest paid; that on account of the failure and refusal of appellee to cancel and deliver said paid notes, or to protect appellant in the payment hereof, appellee is not entitled to the possession of the premises or to maintain the action, and appellant is "entitled to offset the amount due on said notes by plaintiff to him as aforesaid, against the amount now matured on said notes," and by reason thereof denied that he was in default. Appellant alleged that the notes were promissory negotiable notes, and that appellee had sold some of said notes, and that by reason of said sale appellee is estopped to maintain this action or recover possession of the said lots. Appellant further alleged that at the time of the making of said contract for the sale of said property appellee represented same to be clear of liens and incumbrances; that said property is incumbered with two judgment liens in sums, respectively, of $148.40 and $125.32, each with interest, and one outstanding vendor's lien note for $475, with interest, and taxes due on said property in the sum of $100; that appellant, as provided in the contract, offered to pay said indebtedness, provided appellee would apply same on said notes now in default, and upon payment surrender said notes in amounts equal to the amount paid by appellant, but that appellee refused to permit appellant to pay said indebtedness against said property, and refused to apply any payment so made to the discharge of said notes.

Appellant further pleaded in the alternative that, if he was mistaken in the above facts as pleaded, and if appellee was entitled to recover said premises, then he alleged the execution of said notes, the payment of the cash as stated, the payment of the first three notes and interest as stated, and the $100 taxes; that the unpaid notes aggregate $900, with interest; that in addition to the above payments he has paid to the holder of said outstanding indebtedness the sum of $100; that said lots at the time of the making of said contract of sale were reasonably worth $2,500, and that, but for said incumbrances and appellee's refusal to permit appellant to pay same, appellant could and would have realized such sum from said property. Appellant pleaded that he had expended the sum of $500 in improvements on said lots. Appellant prayed that appellee take nothing by his suit; that he recover of appellee the amount he has paid on said notes; or, in the alternative, that he have judgment canceling said contract, and for the sum of $3,032.25, and that said sum be fixed as a lien upon said property, and for its foreclosure.

Appellee, by supplemental petition, replied by general demurrer, general denial, pleaded the contract above set out, and failure of appellant to comply with its terms. in that four of said notes are past due and unpaid; that notes maturing June 1, 1920, September 1, 1920, and December 1, 1920, were paid in full and the notes delivered to appellant; that on note due March 1, 1921, appellant paid $100, and said amount applied

to the indebtedness against said premises held by C. E. Nichols, who was instructed by appellee to apply the balance of said note, when paid, to the said indebtedness held by him against said property, but that no ·balance on said note has been paid; ·that since said time notes maturing June 1, 1921, September 1, 1921, and December 1, 1921, have not been paid, and no bona fide offer to pay same has been made. Appellee alleged demand for possession of said premises, as provided in the said contract, and appellant's refusal to deliver possession; that all of said unpaid notes are in the possession of appellee; denial of the sale of any of said notes.

Appellee tendered into court the unpaid notes, duly canceled, to be delivered to appellant on surrender of possession of the premises, as in the contract provided. By way of cross-action appellee denied that appellant had made improvements in good faith, and alleged that, if any were made, they were not of any value to the property; alleged that appellant had been in possession of the premises since March 1, 1921, without consideration paid, and that under the third paragraph of the contract above set out appellant asked for rent from above date to January 1, 1922, as in the contract provided.

It was agreed that appellee was the common source of title and that both parties claim through such common source. The case was tried with a jury, and at the conclusion of the evidence the court instructed a verdict in favor of appellee for title and possession, and rents, and on the instructed verdict judgment was rendered for appellee.

[1] The first two propositions suggest fundamental error on the ground that under the evidence and the matters pleaded in appellee's supplemental petition the action of trespass to try title will not lie. Appellant was in possession· of the premises under the contract of sale, and as alleged he had failed to pay several of the notes, as he had agreed in the contract, and had refused to surrender possession. The title to the premises as agreed by the common source was in appellee, and the appellant, claiming under the contract of purchase under appellee, had no title, and could have none, except upon the payment of the consideration expressed in the contract; that is, until appellant had paid for the two lots he held them in subordination to appellee's better right. The contract of purchase being executory, on the failure óf appellant to comply with its terms, the appellee could sue for a specific performance, that is, sue on the notes and subject the lots to their payment, or abandon the contract and bring an action for the recovery of the lots by which he could have his writ of possession, unless appellant should. then exercise his right of redemption, that is, bring the due

and unpaid money, as specified in the contract, into court, and claim a specific performance of the contract. Estes v. Browning, 11 Tex. 246, 60 Am. Dec. 238; Walker v. Emerson, 20 Tex. 707, 711, 73 Am. Dec. 207;, Keys v. Mason, 44 Tex. 140; Kirby v. Cartwright, 48 Tex. Civ. App. 8, 106 S. W. 742, and cases cited. There is no controversy in the evidence but that the notes mentioned in the contract were given as a part of the purchase price of the two lots, and that' the notes had not been paid. We think it clear that appellee could sue in trespass to try title. Appellee had the title to the lots in question, and had the right of possession upon failure of appellant to discharge the notes at maturity: The cases to which we are referred by appellant are not in point. We need not review them.

[2] Under the third proposition appellant insists that appellee was not entitled to rescind the sale without first canceling and tendering the outstanding notes to appellant, or offering to protect him against them. Appellant alleged the payment of the second and third maturing notes, and the failure and refusal of appellee to deliver same to him, and his insistence in his answer and here is that appellee is not entitled to possession of the lots, or to maintain this action, without first making delivery or tender of the paid and unpaid notes. Appellee alleged in his supplemental petition that the three paid notes were delivered by appellee to appellant, and that the unpaid notes he "tenders into court, properly canceled, to be delivered to said defendant upon the surrender of possession of said premises under the terms of said contract." The record shows that the unpaid notes were introduced in evidence, and the judgment recites that the unpaid purchase-money notes, stating the aggregate amount', be canceled as against appellant. If the simple matter of the tender of the notes could be made an issue in the case, we think that a tender of the paid and unpaid notes is not a necessary requisite precedent to the bringing of a` suit to cancel or rescind a 'contract for the sale of real estate. Davis v. Burkholder (Tex. Civ. App.) .218 S. W. 1101. In Lanier v. Foust & Douglass, 81 Tex. 186, 16 S. W. 994, where a deed was executed conveying land and reserving a lien to secure unpaid purchase money, and treated by the court as an executory contract for the sale of the land, it was held that, whenever the vendee refuses to pay, the vendor may claim an immediate rescission :and recover the land, and that "a surrender of the notes was not necessary to a rescission of the sale." The above holding, it seems to us, sufficiently disposes of the appellant's contention that the unpaid notes had not been tendered to him.

[3] Appellant, under his fourth and several following propositions, suggests that appellee was not entitled to rescind the con-

tract of sale and recover possession of the two lots because of a certain recorded judgment lien and other liens against the property. The contract by its terms (fourth clause) called attention to the incumbrances on the property and provides:

"Party of the first part [appellee] agrees * * * that, if it becomes necessary for the parties of the second part [appellant] to pay out any sums of money in order to protect themselves against any incumbrance that already exists against the said property, that such sum or sums shall be credited on the first maturing notes."

The evidence shows that the outstanding indebtedness enforceable against the property aggregates approximately $800; that the entire consideration agreed to be paid for the property was $2,000, of which only $150 was cash paid, and the balance of $1,850 represented by promissory notes payable as shown in the contract. In addition to the cash payment, appellant paid three of the notes, leaving about $1,400 of which, under the contract, he could have applied to the discharge of the indebtedness against the property. The fourth note was sent to the Citizens' State Bank for collection. On the fourth note appellant paid $100 and applied this payment on the indebtedness against the property, and defaulted on the balance due on the fourth note, and on all the balance of the notes. Appellant testified:

"As to why I wouldn't pay the balance of the $150 note [fourth note] Mr. Reik deposited with the Citizens' State Bank after I paid the $100, he wouldn't allow the taxes as credit, and I wouldn't pay any more. * * * When I paid that $100, I knew Mr. Nichols [the bank president, and holder of the entire indebtedness against the property] was applying it to these liens against the place. The reason I didn't pay the balance of it and apply it against the liens was the simple fact that there wasn't enough of them to liquidate the indebtedness. They were payable one at a time, but there was [not] more than one due. * * * They hadn't tendered me a sufficient amount of my notes at that time to enable me to pay off the entire lien."

On the trial all of the unpaid notes were produced, read in evidence, and tendered in court, and appellant, we think, then had the right, under his contract and his equity of redemption, at any time before judgment, to tender payment. He had the opportunity to pay the notes or the indebtedness on the property, but the record fails to show that he made any effort to do either. He testified:

"I stand ready now to pay these liens provided I can get the proper credit on the notes now matured."

But he made no offer or tender of money to discharge either the indebtedness on the property or the notes. Tom v. Wollhoefer, 61 Tex. 281; Estes v. Browning, 11 Tex. 237,

60 Am. Dec. 238; Dillingham v. Kerr (Tex. Civ. App.) 139 S. W. 911. It was not sufficient to simply say conditionally what he was ready and willing to do, but the time had arrived in the progress of the matters then pending when he must avail himself of the rights which the law and his contract gave him, by then tendering his money to discharge the indebtedness and notes then due. Had he offered to do either, the case would be different.

Appellant has not the right to remain in possession of the property and refuse to pay the agreed consideration. Appellant invokes the principle announced in Dillingham v. Kerr, supra, to the effect that, where the grantor of land suffers default in the payment of the consideration without complaint, and thereafter having treated the contract as continuing, he could thereafter revive his right to rescind only upon distinct notice of his purpose so to do. We do not think the facts of this case make applicable the principle invoked. Here there was no waiver of the time for payment of the consideration. Demand for payment was made, and payment refused. In that case the condition of the bond for title was in substance that, whenever Kerr had secured title, Holland was to pay the consideration mentioned. Kerr secured title about nine years thereafter, but made no demand for the payment of the notes during his lifetime. In that case the assignee, Dillingham, of the grantee, Holland, tendered the full payment of the consideration, except as to interest, into the registry of the court, which was refused. Here there was no payment or tender of payment of the notes or the indebtedness against the property, or any substantial offer to then do either. It might be stated here that the undisputed evidence of C. E. Nichols, the owner and holder of the judgment liens and indebtedness against the property, other than the appellant's notes, is that he had sent statements of his claims to both appellee and appellant, and requested that "satisfactory arrangements be made" for payment, and that "Mr. Reik arranged it satisfactorily with me." The evidence does not show what arrangement was made, or that the judgments were paid and the property released; but the record shows that Nichols was offering to apply any money payments to the discharge of the incumbrances on the property and the notes.

[4] Appellant insists that the court was in error in awarding rent to appellee for the use of the property. The contract, in the third clause, provides:

"Any sum or sums of money paid on said notes shall be considered merely as rentals for said property while in possession of the party of the second part."

The judgment awarded appellee $500 rent, and appellee remitted $250 of the amount awarded. Appellant seems to have been in-

possession of the property for about 13 months up to the time of trial. The lowest estimate of the rental value of the property was $35 per month. Appellant had paid $600 cash on the notes, and $36.80 on taxes on the property. We have concluded that the judgment for rent presents no reversible error.

[5] Appellant further contends that, before a rescission can be had and judgment for possession awarded, appellee must first tender to appellant all of the money paid by appellant and the value of permanent improvements made on the property. The questions presented in the proposition have often been before the courts of this state. Perhaps the leading case in this state upon the question presented is Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290. In that case Judge Henry reviews a number of Texas cases, and states the law applicable to the issues presented here. Without quoting at length from the case, it is there held, in effect, that in every case of an executory contract for the sale of land, where the vendor has done nothing to waive his right to recover back the land, and the vendee makes default in the payment of the purchase money contracted for, the facts that the vendee has paid part of the purchase money and made valuable improvements, coupled with possession of the property, unaided by some other equity, such facts will not entitle him to recover the purchase money paid or the value of the improvements made. In such cases the vendor cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a price for recovering it back. To quote in part from that case, it is there said:

"When a suit for the recovery back of the land has been brought, where any portion of the purchase money has been paid, or where valuable improvements have been placed upon the land by the vendee or by purchasers under him, and the defendant when sued brings into court and offers to pay the balance of the purchase money with costs of suit, unless there exists strong countervailing equities, the money ought to be received and a recovery of the land denied. On the other hand, when the vendee does not seek to perform the contract, and the vendor shows himself entitled to recover back the land, then, before he should be compelled as a condition of its reacquisition to pay for improvements or refund purchase money, equitable right to such relief should be shown by the vendee. It should appear that it will not be unjust to the vendor to so charge him."

In Bush v. Merrill (Tex. Com. App.) 206 S. W. 834, where a contract for the sale of lots had been entered into, on default made in payment of the contract purchase money, a suit in the ordinary form of trespass to try title was instituted. The court quoted at length from Moore v. Giesecke, supra, and held that the vendor could rescind the contract of sale, recover the unsold lots, and that the vendee was not entitled to recover back the amount paid.

We are of the opinion that the appellant has not shown such equities as would prevent a recovery by appellee of the possession of the lots. As we view the contract of sale of the property, the pleadings of both parties, and the evidence, there was no issue to be submitted to the jury, and the court was not in error in instructing the verdict.

Finding no reversible error, the case is affirmed.