GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. MAHALA CHAMBERS ET AL.

No. 2677.

1. **Fact Case—Contributory Negligence.**—The deceased, a female about nine years old, going home from school with other children, was walking upon the railway track, there fenced and not a public crossing; a train approached, when the children left the track for it. The train shortly before had become detached, the rear portion moving at about eighteen miles an hour. The detached parts were from forty to sixty

yards apart.   After the passing of the first part the child again went upon the track. Seeing the detached cars approaching her she ran along the track from the approaching cars, which ran upon her, causing her death.   These cars were supplied with sufficient brakes and competent brakemen were using them to check the cars.   Under these circumstances, and it appearing that no possible outlook or care on part of the employes after the child went upon the track the second time could have saved her, *held,* that the accident of the train becoming detached was not the proximate cause of the injury, and that there was no liability for damages on part of the railway company.

2.   Same.—The child voluntarily going upon the track between the detached parts of the train was the interposition of an independent cause, without which the injury had not happened.   Her own negligence contributed to the injury.

Appeal from Colorado.   Tried below before Hon. Geo. McCormick. The opinion states the case.

*Brown & Dunn,* for appellant.—The court below erred in its conclusion of law in this, that upon the entire and undisputed evidence the judgment should have been for the defendant; first, because there is no evidence showing defendant guilty of negligence; and second, because the evidence shows such contributory negligence on the part of deceased as bars the right of recovery for the injuries complained of.   Ry. Co. v. Bracken, 59 Texas, 74; Ry. Co. v. Richards, 59 Texas, 373; Ry. Co. v. Smith, 52 Texas, 178; Ry. Co. v. Smith, 62 Texas, 252; Ry. Co. v. Houston, 95 U. S., 697; Cool. on Torts, pp. 660–664.

*Delany, Kennon & Harrison,* for appellees.—It is negligence in a railway company to allow its trains, or any portion thereof, not under control of an engine to run over its line of road, and if in running a train it becomes broken or detached and one sustains injury from the detached portion of the train while in motion, the jury or the court sitting as such may infer negligence on the part of the defendant in not having the proper appliances to hold the train together.   Sherm. & Redf. on Neg., sec. 10, p. 10.

Stayton, Chief Justice. — This action was brought by appellee, joined by her husband, to recover damages for an injury that resulted in the death of her daughter.

The cause was tried without a jury and resulted in a judgment for the plaintiffs.

The court's conclusions of fact were as follows:

"2.   That the girl was nine years of age, and at the time of the killing was upon defendant's right of way, which was enclosed by a wire fence such as is usual in our State and such as is required of all corporations of railway companies to protect their lines against the encroachments of live stock; in other words, what is known as a lawful fence.

"3.   That the line of defendant's roadway at the place of the killing

ran through cultivated fields, and that the girl was killed returning home from school, and that she with other children waited on the line of the track until the engine and cars attached to it had passed; that immediately after the engine and train had passed the deceased ran upon the track attempting to cross it on her way home, when some cars which had become detached from the main train and were running at the rate of about eighteen miles per hour behind the engine ran over and killed her.

"4.   The evidence showed the train of defendant company had become broken and detached some 200 yards from the place of the killing; that the officers, employes, and agents of defendant in charge of the train did everything in their power to prevent the accident after the train had become detached; but there was no evidence before the court as to any care or diligence on the part of defendant, its agents, or employes, to prevent the breaking of the train into two sections before it occurred.

"5.   The court finds from the evidence that the uncoupling of the train was the direct cause of the death of the child, and that defendants have not shown that any diligence was used to prevent it."

It is claimed that the court erred in finding that the death of the child resulted proximately from the negligence of appellant or its servants.

The evidence shows that several children, among whom was the deceased, walked on the railway track from a school house on their way home until the train running on a down grade approached them, when they stepped to the side of the track and there remained until after the engine and cars attached to it had passed.

The train, however, had separated from some cause, and the rear car of that attached to the locomotive, according to the testimony of all the witnesses but one at the place of the accident, was some fifty or sixty yards in advance of the foremost car in that part of the train following.

There were two men on the hindmost section of the separated train, and as soon as the separation was seen, which seems to have been at once, they applied the brakes to arrest that part of the train.

After the rear car attached to the locomotive passed the place where the child was standing she again went on the track and was wounded.

One witness introduced by the plaintiff stated that the child "got on the track and made two or three steps and stopped and looked back; the train was not more than twenty feet away from her; then the train struck her.   *   *   *   After she looked back she made a run forward; she went right forward; from the direction she fell it looked like she was running quartering trying to get off the track.   *   *   *   When she got on the track she made several steps, then she turned around and looked back, then she turned around again in the direction she had been going; the flats were then about twelve feet from her."

Another witness who saw the accident said:   "It was almost imme-

diately after I saw this girl step on the track that I saw her rise up in the air."

The next witness said: "She got on the track and the end of the cars struck her. The two sections of the train were about forty or fifty yards apart, as near as I can come to it. I was about fifty yards from where she got on. I think she ran may be twenty or thirty yards."

Another witness stated that the two sections of the train were about sixty feet apart when the child was killed; that he discovered its separation immediately after it occurred, and that the child killed was then distant about four car lengths, but the inference from his evidence is that the children were then not on the track.

This is all the evidence showing the position of the child and approaching cars from the time she went on the track until she was injured.

It was shown that if the train had not been broken, with the aid of the air brake it could have been stopped in two hundred or three hundred yards, and that if every brake had been applied at the same time that it might have been stopped in one hundred and fifty or two hundred yards.

Under the evidence it must be held that appellant's servants did not fail in diligence to arrest the following cars after their separation from the preceding part of the train; and further, that it was not practicable to arrest it after its separation before it reached the place where the child was injured, much less to arrest it after the child went on the track the second time before it reached her.

The evidence further shows that had the train been not disconnected it would not have been possible to have arrested its motion in the distance requisite to save the child after it last entered upon the track.

There is no complaint that the appliances for arresting the motion of the detached part of the train were not such as the most prudent men engaged in operating railways would have deemed necessary in such an emergency when the lives of their employes and safety of their property would be involved.

There is no claim that a proper lookout was not kept, nor any ground for belief that an argus-eyed lookout most vigilant in the performance of duty could have foreseen the danger to the child in time to have averted the disaster by the use of the most approved appliances in the hands of most faithful servants, for the fact is the child came upon the track so near to the approaching train that no possible diligence on the part of appellant's servants could have then saved it. If safety there was, it was only to be found in the child leaving the track.

If, then, it be conceded that the train separated from the failure of appellant or its servants to use proper care, can it be said, as the court found, "that the uncoupling of the train was the direct cause of the death of the child?"

It can not be said that the injury was the natural or probable result

of the breaking of the train that ought to have been foreseen, and but for the intervention of an independent cause brought into being by the exercise of a will in no way under the control of the appellant or its servants, the accident never would have occurred.

If the child had entered on the track so near the front of the train, which it avoided by leaving the track, that the train could not be stopped before injuring it, it would not be contended that appellant would be liable.

If it had entered on the track immediately after one train had passed but so near to an independent following train that the latter could not be stopped before injuring her, it would not be contended that appellant would be liable.

We do not see that under the facts of this case the last case supposed differs in any material respect from that before us.

After one train passes it may not frequently occur that another follows so closely as did the rear part of the separated train that injured the child, but even on the question of its negligence in going upon the track the same rules would be applied in the two cases.

Had the child not gone on the track the second time it would not have been injured. Neither appellant nor its servants had any control over the volition or actions of the child, and were unable to save it after it placed itself upon the track.

The negligence of the child is clear; the accident did not occur at a crossing or place where persons would be expected to be; her act was the proximate cause of the injury; and under the evidence undisputed the court below should so have found, and for the error in this the judgment will be reversed and here rendered in favor of appellant.

*Reversed and rendered.*

Delivered March 12, 1889.