JOHN H. KIRBY ET AL. V. LEONIDAS CARTWRIGHT ET AL.

Decided November 29, 1907.

**1.—Bond for Title—Construction.**

C. executed to G. a bond or contract for title to a certain half league of land, reciting a consideration paid in cash and containing the further stipulation "should I not be able from any cause to deliver to the said G. a deed for said land within the time above mentioned, then I am at liberty to convey to him within that time a warranty deed in fee simple for a like quantity of land of equal value in some other part of Texas, which said conveyance when so made by me is to be in full satisfaction of this obligation." Held, that C. did not have the option to convey other land than that specified in the contract in satisfaction of the same except upon the contingency named therein, nor could he convey adjacent land in satisfaction of the contract. Upon acquiring title to the land named in the contract within the time named he held the same in trust for G.

**2.—Deed—Date of Delivery—Presumption—Case Criticised.**

A deed is presumed to have been delivered on the day of its date, and not on the day it was acknowledged for record. Kent v. Cecil, 25 S. W. Rep., 715, criticised. Evidence considered, and held to support this presumption.

**3.—Bond for Title—Discharge—Evidence.**

The issue being whether or not a different tract of land had been substituted by agreement of the parties for that specified in a bond for title and in satisfaction of the bond, evidence considered, and held insufficient to support a finding that such agreement had been made.

**4.—Same—Consideration—Presumption of Payment.**

The recital in a contract or bond for title of receipt of the purchase money is *prima facie* proof of that fact.

**5.—Bond for Title—Trespass to Try Title.**

A bond for title to land, reciting the payment of the purchase money, will support an action of trespass to try title or afford a ground of defense,

**6.—Same—Stale Demand.**

Neither limitation nor laches can be set up by plaintiffs in trespass to try title against defendants in possession under a bond for title from plaintiffs' ancestor, the defendants simply resting upon their equitable title and asking no affirmative relief.

**7.—Lost Deed—Evidence.**

In a suit of trespass to try title, evidence considered, and held to require a finding by the jury that plaintiffs' ancestor had executed a deed to the land in controversy.

Appeal from the District Court of San Augustine County. Tried below before Hon. A. T. Watts, Special Judge.

*Joe H. Eagle, Moye Wicks, Denman, Franklin & McGown, Lanier & Martin* and *Taliaferro & Nalle,* for appellants.

*Davis & Davis, Cobbs & Hildebrand* and *John H. Cunningham,* for appellees.—The court did not err in submitting to the jury the first special issue, because the uncontroverted evidence showed that M. Cartwright conveyed to John Gillespie by warranty deed a like quantity of land, of equal value, and for the same consideration within the forty days, which was the life of the contract, and the law will presume that the contract was thus performed by Cartwright within the time and in the manner in which he agreed and reserved the right to perform, and after the great lapse of time the presumption is conclusive where no evidence to the contrary is offered by the defendant. Smith v. Hampton, 13 Texas, 459; Hodges v. Johnson, 15 Texas, 570; Farris v. Bennett, 26 Texas, 568; Rivers v. Washington, 34 Texas, 267; Sparks v. Dawson, 47 Texas, 143; Ashmore v. Evans, 11 N. J. Eq., 151; Husky v. Maples, 88 Am. Dec., 590; Walker v. Emerson, 73 Am. Dec., 207; Smithpeter v. Ison, 53 Am. Dec., 734; Smith v. Johnson, 54 Am. Dec., 126; Johnson v. Toulmin, 52 Am. Dec., 212; note, 18 Am. St. Rep., 879-888; Ordinary v. Steedman, 18 Am. Dec., 652; Philips v. Morrison, 6 Am. Dec., 638; 1 Jones on Evidence, sec. 62.

REESE, ASSOCIATE JUSTICE.—This is a suit in trespass to try title by Leonidas Cartwright and others, heirs of Matthew Cartwright, deceased, against John H. Kirby and others to recover the east half of the Henry Williams league in San Augustine County. After the usual allegations in an action of trespass to try title plaintiffs set out in their petition that the basis of defendants' title was a certain contract executed by Matthew Cartwright to John Gillespie as follows:

"State of Texas,
San Augustine County.
"Know all men by these presents, that for and in consideration of the sum of one thousand one hundred and eighty-two dollars to me in hand paid, the receipt whereof I hereby acknowledge to have been paid by John Gillespie, I hereby bind myself, my heirs and assigns to make and deliver to him, the said Gillespie, in the county

of Grimes, in the said State, in the course of forty days from this date a warranty title to the east half of league of land granted to Henry Williams, which said land is situated in said county of San Augustine, adjoining Jose Hobdy's headright. It is hereby agreed and understood that should I not be able from any cause to deliver to the said Gillespie a deed for said land within the said time above mentioned, then I am at liberty to convey to him within that time a warranty deed in fee simple for a like quantity of land of equal value in some other part of Texas, which said conveyance when so made by me is to be full satisfaction of this obligation.

"Witness my hand and seal, this 23d of April, 1847.

(Signed) M. Cartwright.    (Seal.)

"Witness:

J. Pinkney Henderson,
John P. Love."

As to this contract or bond for title, plaintiffs alleged that subsequently to its execution Matthew Cartwright executed to Gillespie a warranty deed to the east half of the Jose Hobdy league in San Augustine County, which lay alongside of the Henry Williams and was of equal value, in full satisfaction of the aforesaid contract. It was further alleged that at the time of the execution of the said contract Cartwright did not have title to the east half of the Williams league; that he did not acquire such title until May 18, 1847; that the said contract was an executory contract, did not convey the title, and the claim thereunder by defendants was a stale demand and barred by the statute of limitations of four and ten years. The plea of stale demand was set out with full and appropriate allegations of laches on the part of defendants.

Defendants pleaded the general issue and not guilty, specially denied that the deed for the Hobdy league was in pursuance, or satisfaction, of the obligations of the contract to convey the Williams half league; set up execution by Cartwright, subsequently to the execution of the contract, of a deed to Mrs. Gillespie, administratrix of John Gillespie, for the Williams half league in pursuance of the obligations of the contract, which deed, they allege, has been lost and which they will seek to establish by secondary and presumptive evidence. They also claim that if the contract did not convey the title, and if they failed to establish the execution of the subsequent deed, Cartwright acquired and held the title to the Williams half league in trust for Gillespie, his heirs and assigns, and that they hold title under Gillespie. They also alleged fully and particularly claim and assertion of ownership on the part of Gillespie and those claiming under him and recognition of their title by Cartwright and nonclaim by him and his heirs.

Plaintiffs are the only heirs of Matthew Cartwright and are entitled to his estate. Defendants have whatever title passed to Gillespie by the bond for title or by any deed, executed in pursuance thereof.

Upon the issues thus raised the court, upon motion of plaintiffs, submitted two special issues to the jury. First. Was the deed to the

Hobdy half league made and executed in satisfaction of the contract to convey the Henry Williams half league? Second. Did Cartwright subsequently to the execution of the bond for title execute to John Gillespie or his administratrix a deed to the Henry Williams half league? The first question was answered in the affirmative and the second in the negative, whereupon the court rendered judgment for plaintiffs, from which judgment defendants appeal.

It is assigned as error, by the first assignment, that the court erred in submitting the first special issue as to the execution of the Hobdy deed in satisfaction of the contract to convey the Williams half league, in that there were no facts or circumstances in evidence showing or tending to show that the deed was given in satisfaction of the bond for title. By their second assignment appellants complain that there was no evidence to sustain the finding of the jury on this issue and that their finding is against the great weight and preponderance of the evidence. The third assignment complains of the refusal to give appellant's special charge instructing the jury to find for the defendants, there being no evidence that the deed to the Hobdy half league was given in satisfaction of the contract to convey the Williams half league.

In the view we take of the case, if Cartwright acquired the title to the Williams league, as claimed by plaintiffs in their petition and as established by the undisputed evidence, on the 18th of May, 1847, twenty-five days after the execution of the contract or bond for title, and if said bond for title was not satisfied by the conveyance of the Hobdy half league, defendants suing as plaintiffs, would have been entitled to recover the land as against the plaintiffs, heirs of Cartwright, and *a fortiori* could successfully defend their title under this instrument, and this whether any deed was subsequently executed by Cartwright to Gillespie or not. This view seems to have been taken by the trial court and also by appellees upon the trial in the District Court, as shown by the submission, at their request, of the two issues alone upon which the case went to the jury.

The contention of the appellees that the Hobdy deed was given in substitution and satisfaction of the obligation to convey the Williams half league rests primarily upon an entire misconstruction of the terms of the contract. They assume, and it is largely, if not solely, the basis of their contention, that by the terms of the contract Cartwright *had the right* at the time he executed the Hobdy deed to substitute the Hobdy half league for the Williams half league.

The terms of the instrument are absolutely clear and unambiguous on this point. After the unconditional obligation, for the consideration acknowledged to have been received in cash, to make and deliver within forty days a warranty title to the east half of the Williams half league, the stipulation is added, "that should *I not be able* from any cause to deliver to the said Gillespie a deed for said land within the time above mentioned, then I am at liberty to convey to him within that time a warranty deed in fee simple for a like quantity of land of equal value *in some other part* of Texas, which said conveyance when so made by me is to be in full satisfac-

tion of this obligation." It was only in the event that Cartwright was not able to get the title to the land referred to within forty days that he reserved that right to satisfy the obligation of the contract by the conveyance of other land. And even in that event he did not have the right, under the contract, to substitute the Hobdy half league which lay alongside the Williams, but only to substitute lands of equal value in some other part of Texas. Without some subsequent agreement on the part of Gillespie, express or implied, Cartwright could neither at any time substitute for the Williams the Hobdy half league, nor, except in the event he was unable to procure title to the Williams half league within the forty days, substitute any other lands whatever.

Now, the undisputed evidence shows that Rowe, who had title to the Williams half league, conveyed it to Cartwright by deed dated May 18, 1847, twenty-five days after the execution of the contract, which deed was proven for record on June 15, 1847. Appellees insist that this deed must be presumed to have been executed on June 15, the day it was proven for record, and not on the day of its date, though it had been expressly set out in their petition that the title was acquired by Cartwright on May 18. There being no pretense or claim that this bond for title has ever been satisfied, unless it was satisfied by the execution of the deed to the Hobdy half league, if it was not so satisfied, and therefore never satisfied at all, we do not think that it is material whether the deed from Rowe to Cartwright was delivered on the day of its date or the day it was proven for record. Appellees cite the case of Kent v. Cecil (25 S. W. Rep., 715), in support of their contention. We have carefully examined the opinion of the Court of Civil Appeals of the Fourth District in that case and would not be prepared to assent to it, if upon the facts of that case it were not distinguishable from the present case. The authorities cited by the court (Martind. Conv., sec. 204; Tied. Real Prop., sec. 812), do not sustain the statement as to the weight of authority. To the contrary, in Devlin on Deeds (vol. 1, sec. 265), it is stated that the general presumption is that a deed was delivered at the time it bears date, and that this rule is adhered to in most of the States, where the date of the deed and the date of acknowledgment are different. The decided weight of authority seems to us to be in favor of the rule that the date of the deed, and not of its acknowledgment, in the absence of other evidence, is presumptively the date of delivery. (13 Cyc., 731; 9 Am. & Eng. Ency. of Law, 152, note to Lake Erie Ry. Co. v. Whitham, 46 Am. St. Rep., 367; 86 Am. Dec., 63.) And specially should this be the rule with deeds of the class of the one from Rowe to Cartwright, executed in 1847. At that date the country was thinly settled and officers authorized to take acknowledgments few and scattered, and it is a matter of common knowledge that instruments of this kind were sometimes carried a long time, in many cases for years, before being authenticated for record. This is forcibly exemplified by the deed from Watson to Rowe introduced in evidence by appellees, which was dated January 21, 1839, and proven for record September 29, 1847. However the general rule as to

presumptions may be, all the authorities agree that such presumption is to be indulged only in the absence of evidence as to the date of delivery, and may be overcome by circumstances tending to show that the deed was delivered at its date, or not until its acknowledgment, as the case might be. We think the circumstances in the present case are sufficient to overcome the presumption that the deed was delivered on the date of its acknowledgment, if that rule be the correct one, as laid down in Kent v. Cecil, *supra.*

Cartwright was under obligation to make reasonable endeavor to acquire the title to the Williams half league within forty days of the date of his contract with Gillespie. He had sold the land and obligated himself to make title in that time, saving the privilege of substituting other land. only in the event that he was not able to procure title to the Williams within the stipulated time. It it reasonable to presume that · he was already in negotiation with Rowe for this land, and it is extremely probable that the trade had been made, lacking only the execution of the deed, in view of the fact that Rowe was a resident of Travis County, and that in twenty-five days thereafter he signed the deed, with the evident purpose of making immediate delivery. It was not acknowledged by him, but proven by one of the subscribing witnesses, so that the deed passed out of his possession before the date of the authentication, otherwise we have the condition of Rowe taking the deed to the officer and taking along with him the subscribing witness to prove it for record, instead of himself acknowledging it. Cartwright lost his right to substitute other lands after forty days. It is not reasonable to presume that he would have let the time slip by before getting the deed, which had been signed ·within twenty-five days. We think these circumstances sufficient to .overcome whatever slight presumption there might be, under the rule laid down in Kent v. Cecil, that the deed was not delivered until it was proven for record.

How stands the record then as to evidence that, by agreement between Cartwright and Gillespie subsequent to the execution of the contract to make title to the Williams tract, a deed should be made to the Hobdy tract in satisfaction of said contract? We think there is not a circumstance in the record that supports or tends to support appellees' contention on this point. They all, on the contrary, rebut such a conclusion, which is in itself very unreasonable. The two instruments were executed on the same day, were proven for record on the same day, before the same officer, by the same subscribing witness, and were filed for record and recorded on the same day. The Hobdy deed makes no reference to the contract. There is no significance in the fact that the contract was recorded on page 82 and the deed on page 83 of the same book. If the clerk had both instruments in his hands for record at the same time, executed the same day, it could not have been considered of any importance by him as to which he recorded first, and his recording the contract first does not indicate that he received it first, rather than that he received them at the same time. But even if we agree that the contract for the Williams was executed and filed with the clerk first, that does not in the slightest degree tend to establish

the main fact, which is that the Hobdy was conveyed in satisfaction of the contract to convey the Williams. If, after the contract had been executed to convey the Williams, and on the same day it had been agreed to substitute the Hobdy half league then owned by Cartwright and make a deed for it in satisfaction of the obligation, the first thought of sensible men would have been to withdraw the contract for the Williams, which had been thus nullified, or at least to have set out in the Hobdy deed that it was executed in satisfaction of the contract to convey the Williams. The fact that the consideration of the two instruments was the same is of no force in view of the uncontroverted fact that the two tracts were of equal valuation. That the two tracts make a solid body of a league of land tends strongly to support the inference that Gillespie wanted them both. Cartwright paid in 1848 the taxes on the Williams half league for the years 1846, 1847 and 1848, amounting to $4.50. He was liable for the taxes for 1846 and 1847. The taxes for 1848 we must presume amounted to $1.50. In view of the fact that he never rendered or paid taxes on the land after this, although he lived in San Augustine County until 1870, and was careful about the payment of taxes, the force of this payment of taxes for 1848, for which he was not liable, at the same time that he paid them for 1846 and 1847, for which he was liable, is entirely destroyed as evidence to support the main fact. All of the evidence of claim of title on the part of Gillespie and those claiming under him, inventory and sale of the land by his administratrix in 1850, rendition for taxes for 1847 and 1849, sale by Mrs. Gillespie in 1882, and continuous, open and notorious, assertion of title under this sale to the present time, accompanied by payment of taxes for every year including and since 1883, and in the face of this, no assertion of ownership, rendition for, or payment of taxes by Cartwright or his heirs since the contract of sale, except payment of taxes for 1848 referred to, notwithstanding Cartwright lived in the same county in which the land was situated until 1870, and his two sons, plaintiffs in this suit, one of them until four years ago and the other until eleven years ago; the failure to inventory this land by Cartwright's administratrix, his wife; the partition of all his estate among his heirs, not including this land; all of these facts, established by the uncontroverted proof for the purpose of showing by presumption the execution of a subsequent deed to the administratrix of Gillespie, if not sufficient to require a peremptory instruction to the jury to find for the appellants on that issue, all tended very strongly to rebut appellees' contention that by subsequent agreement between Cartwright and Gillespie, made on the same day as the bond for title for the Williams, the bond had been nullified by the execution of the deed for the Hobdy half league. Gillespie lived in Grimes County and died there in December, 1847, and his estate was administered there. His administratrix inventoried both the Hobdy half league and the Williams half league, and in 1850 both tracts were sold as the property of his estate under the orders of the probate court. The sale of the Williams was disapproved, and it was again sold, but this sale appears not to have been

consummated and the Williams passed to Mrs. Gillespie under a general deed from the heirs. Cartwright lived in San Augustine County and died there in 1870, and his estate was administered there. His administratrix returned an inventory and appraisement of the property of his estate, upon which this land did not appear, and subsequently his heirs partitioned his property among themselves, but in such partition this land was not included.

Appellees attempt to explain the circumstances of the omission of the Williams tract from the inventory of the property of Cartwright's estate by his administratrix, by the circumstances that a tract of land in Navarro County, which had been inherited by Cartwright from his father, was also omitted from this inventory, but this evidence discloses that this tract was in litigation and does not show that Cartwright's title was ever sustained or held to be good. In addition to this there is much difference between omitting the Navarro County tract from the inventory and the omission of this half league lying in the county of Cartwright's residence and where his estate was administered, accompanied as it was with so many circumstances showing a nonclaim by Cartwright and his heirs.

We think that the evidence did not raise the issue suggested by the first special issue submitted to the jury, and that the jury should have been instructed, as requested by appellants, that there was no evidence that the deed for the Hobdy half league was made in satisfaction of the contract to convey the Williams.

This left appellants holding title under the bond for title which had never been satisfied, or repudiated, by Cartwright or his heirs. The recitals in the contract of receipt of the purchase money was *prima facie* proof of that fact, and it was not disputed. (Short v. Price, 17 Texas, 403; Tumlinson v. York, 20 Texas, 698; Byars v. Thompson, 80 Texas, 475.)

Such a contract, under all the circumstances shown by the undisputed evidence, was sufficient to have entitled appellants to recover the land, if they had been plaintiffs. Certainly when sued they could defend their possession under it. Having obligated himself to convey the Williams half league, if he could get the title in forty days, and having received the purchase money, when Cartwright acquired the land, and especially when he acquired it within the forty days, the title thus acquired by him inured to the benefit of his grantee in the bond for title, and both he and his heirs are estopped to deny the title of those holding under his contract to convey. Whether such title be a legal or equitable one is of no importance. Either would equally well support an action of trespass to try title by appellant or afford a ground for defense. (Wright v. Dunn, 73 Texas, 296; Scarborough v. Arrant, 25 Texas, 132; Catlin v. Bennatt, 47 Texas, 170; Miller v. Alexander, 8 Texas, 45.)

That the plea of laches and stale demand set up by appellees to defeat appellant's title, has no application, even if they had been plaintiffs, has been several times decided by this court, and these decisions we are content to follow. (Lyster v. Leighton, 81 S. W. Rep., 1033, and cases cited.) Appellants rested upon their title and

did not seek specific performance or any other affirmative relief, and neither the plea of the ten years' statute of limitation nor the defense of laches and stale demand applied. (Hensel v. Kegans, 28 S. W. Rep., 705.) The bond for title had never been repudiated, on the contrary the evidence is conclusive that the title under it had been always recognized by Cartwright in his life time, and his heirs after him until a short time before bringing this suit. As long as their title was thus recognized, even if only an equitable title, there was nothing to call for affirmative action by appellants, and they have not been guilty of laches.

Upon the undisputed evidence the court should have instructed a verdict for appellants upon the issue as to their title under the bond for title irrespective of the evidence introduced to show by circumstances and presumption the execution subsequently of a deed from Cartwright to the administratrix of Gillespie.

Upon the second issue appellants do not contend that the evidence required a peremptory instruction to the jury to find that a subsequent deed to Gillespie or his administratrix or heirs had been executed. We think that it was error to refuse appellants' special instruction No. 5 as set out in their 12th assignment. If the bond for title was not sufficient to enable Gillespie and those holding under him to take and hold possession of the land, but it was necessary, to enable them to do so, that a subsequent deed should have been executed by Cartwright, we would hold that the verdict of the jury upon the second issue was contrary to the law and the evidence, and unsupported by the evidence. In such case the only explanation of the acts of the parties, as shown by the undisputed evidence, would be found in the fact that such deed had been executed. The case seems to have been submitted to the jury upon the theory that a negative answer to the first question or an affirmative answer to the second would either have required a judgment for defendants.

We have not found it necessary to pass upon the other assignments of error. From our conclusion that upon the undisputed evidence the jury should have been instructed to return a verdict for appellants, as requested by them, it results that the judgment should be reversed and judgment here rendered for them, and it is so ordered. (Stevens v. Masterson, 90 Texas, 417; Henne v. Moultrie, 97 Texas, 216.)

*Reversed and rendered.*

Writ of error refused.