**KING et al. v. KLOH et al. (No. 2215.)**

Court of Civil Appeals of Texas. El Paso. Oct. 25, 1928.

Rehearing Denied Nov. 28, 1928.

J. F. McKenzie and D. Storms, both of El Paso, for plaintiffs in error.

Whitaker & Peticolas and Breedlove Smith, all of El Paso, for defendants in error.

WALTHALL, J. Alphonse Kloh, W. Forbes Morgan, and David Rumsey, plaintiffs below, and defendants in error in this appeal, brought this suit against J. R. Burns and W. M. King, defendants below and plaintiffs in error here, and diverse other parties who are not appealing, and of whom, the judgment having made proper disposition, we need make no further reference. Plaintiffs in error and defendants in error in their briefs designate themselves as in the trial court, that is, plaintiffs in error are designated defendants, and defendants in error, plaintiffs, and we shall so refer to them.

Plaintiffs' petition contains two counts. In the first count they allege five separate sales of land in El Paso county to defendants, the defendants executing for each sale a separate series of notes in favor of plaintiffs, secured by vendor's lien upon the lands sold, the notes providing for attorney fees and accelerated maturity clause in case of default. Default in payment of some of the notes is alleged and that plaintiffs declared all notes due and brought the suit to enforce

collection. Each series of notes and the lands involved are set out at length in the petition.

There were five sets of vendor's lien notes sued on, involved in five different sales of land, which, tabulated in the order in which they occurred, show the following:

Sale No. 3794
Dated Dec. 7, 1920, covering all that part East of East Line of E. P. & N. E. (E. P. & S. W. System) Right of Way, Sec. 15, Tsp. 1, Blk. 80, El Paso County.
Note No. 1524, due Dec. 7, 1922 prin. $281.80
" " 1525, " " 7, 1923 " $281.80

Sale No. 3795
Dated Dec. 7, 1920, covering all of Sec. 33, Blk. 80, Tsp. 1, less 5¼ acres in Ry. Right of Way.
Note No. 1527, due Dec. 7, 1922 prin. $793.44
" " 1528, " " 7, 1923 " $793.44
(These notes were paid after institution of the suit by the defendant A. Frank and others and said lands were dismissed from the suit as shown by the judgment.)

Sale No. 3812
Dated May 30, 1921, covering all of Sections Nos. 3, 5, 9 and 15, Tsp. 1, Blk. 79.
Note No. 1551, due May 30, 1923 prin. $1280.00
" " 1552, " " 30, 1924 prin. $1280.00
" " 1553, " " 30, 1925 prin. $1280.00
" " 1554, " " 30, 1926 prin. $1280.00
" " 1555, " " 30, 1927 prin. $1280.00
" " 1556, " " 30, 1928 prin. $1280.00
" " 1557, " " 30, 1929 prin. $1280.00

Sale No. 3819
Dated Oct. 4, 1921, covering all of Section No. 31, Blk. 79, Tsp. 1.
Note No. 1578, due Oct. 4, 1923 prin. $320.00
" " 1579, " " 4, 1924 prin. $320.00
" " 1580, " " 4, 1925 prin. $320.00
" " 1581, " " 4, 1926 prin. $320.00
" " 1582, " " 4, 1927 prin. $320.00
" " 1583, " " 4, 1928 prin. $320.00
" " 1584, " " 4, 1929 prin. $320.00

Sale No. 3832
Dated Apr. 27, 1922, covering all of Section No. 31, Blk. 78, Tsp. 1, Sections Nos. 7 and 19 in Blk. 78, Tsp. 2; Sections Nos. 25, 27, 29, 33, 35, 37, 39, 41, 43, 45 & 47 in Blk. 79, Tsp. 1; Sections 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, & 47 in Blk. 79, Tsp. 2.
Note No. 1606, due April 27, 1923 prin. $12160.00
" " 1607, " " 27, 1924 prin. $12160.00
" " 1608, " " 27, 1925 prin. $12160.00
" " 1609, " " 27, 1926 prin. $12160.00
" " 1610, " " 27, 1927 prin. $12160.00
" " 1611, " " 27, 1928 prin. $12160.00
" " 1612, " " 27, 1929 prin. $12160.00
" " 1613, " " 27, 1930 prin. $12160.00
" " 1614, " " 27, 1931 prin. $12160.00

Plaintiffs make a statement of the title to the lands under which they claim, and allege that they are the common source of title to the lands involved in the suit. In a second count plaintiffs sue in trespass to try title, and pray for title and possession of the lands, for writ of restitution, rents, damages, costs, general and special relief, and in the alternative, for judgment against Burns and King for the principal, interest, and attorney fees as provided for, for costs, for foreclosure of the vendor's lien, general and special relief, legal and equitable.

Defendant W. M. King answered in his individual capacity and for the partnership firm of Burns & King, but not for Burns individually; pleaded separate pleas of not guilty and general denial; pleaded an agreement as to application of $7,200 alleged to be in possession of plaintiffs but belonging to defendants; defendants, as we understand it, urged no defense to said notes other than that they were, by reason of said agreement, entitled to apply the alleged credit ($7,200) so as to pay out the notes involved in sale No. 3794, in above tabulation, and to pay out sections 3 and 15 of the four sections in sale No. 3812, and apply the balance, if any, remaining so far as same would go to pay out sections 5 and 9, being the other two sections in sale No. 3812, as in the above tabulation.

Defendants alleged that surveys 5 and 6 of the sale No. 3812, had been sold to other parties, the vendees assuming the unpaid purchase money due plaintiffs, and that by the alleged agreement plaintiffs were to apply the proportionate part of the money due as against the land involved in sale No. 3794, and to surveys 3 and 5 of sale No. 3812, which had not been sold.

Defendants prayed for judgment for discharge of the notes and lien against that part of survey 15, township 1, block 80, and surveys 3 and 15, township, 1, block 79; and for credit due for any balance then remaining of the $7,200 to the balance of unpaid notes against surveys 5 and 9, township 1, block 79; that the vendor's lien upon the fractional part of survey 15, township 1, block 80, and surveys 3 and 15, block 79, township 1, be discharged; and in the alternative for judgment for payment in full on notes and discharge of the lien on fractional part of surveys 15, township 1, block 80, and payment of all purchase money as to surveys 3 and 15, township 1, block 79, and any balance of said $7,200 be applied as a credit on unpaid purchase money found to be due on surveys 5 and 9, township 1, block 79, with foreclosure decreeing that surveys 5 and 9, township 1, block 79, be first sold before resorting to sale of surveys 3 and 15 to liquidate the notes against surveys 3, 5, 9 and 15 of sale 3812, and for discharge of the vendor's lien thereon.

Plaintiffs, by supplemental answer, joined issue on the several matters pleaded by defendants.

The case was tried with a jury; the court instructed a verdict for the plaintiffs, and so entered judgment. The judgment recites the appearance of plaintiffs by attorney; the appearance of King and the copartnership of Burns & King by attorney, and that Burns and other defendants came not, though duly cited; the appointment of Breedlove Smith, a practicing attorney of El Paso, Tex., to represent all defendants cited by publication, who, for said defendants, filed answer; the judgment recites that plaintiffs would no further prosecute their cause against section 33, block 80, township 1, T. & P. Ry. Co. survey, as in above tabulation (except 5¼

acres E. P. & N. E. R. R. right of way); the judgment directed that the suit be dismissed in so far as it affects said section 33, block 80, township 1, as above (defendants A. Frank and others having paid notes listed under sales Nos. 3794 and 3795, after suit was filed), and in so far as it affects certain defendants, naming them, as claimants of an interest in the above particular sections, the jury having returned their verdict as directed, judgment was entered for plaintiffs against all other defendants for title and possession of the lands described in the judgment; judgment that plaintiffs take nothing against King and the partnership of Burns & King as to certain lands described, and as to such lands King and the firm of Burns & King have judgment as to the indebtedness as to said land, and that the vendor's lien have no further force; judgment that King and the firm of Burns & King take nothing by their cross-action. It was further adjudged that plaintiffs recover upon their action in trespass to try title, and that they take nothing further except their costs stated in the judgment.

King, individually, and the firm of Burns & King, prosecute this appeal.

### Opinion.

Defendants submit that the court erred in refusing to instruct a verdict for them as to surveys 3 and 15, township 1, block 79, referred to under sale No. 3812, in the above statement.

Defendants alleged that plaintiffs, through their agent W. H. Abrams, agreed to accept and did accept from defendants the payment of the proportionate part of said notes given for the purchase price of said surveys 3 and 15, and agreed to discharge the lien against said lands, and that defendants directed that said $7,200 in the hands of said agent be applied to the discharge of the notes against said lands.

In support of the above, defendants refer us to portions of the correspondence between themselves and W. H. Abrams, general agent of plaintiffs in the matters of the sale of said lands. The correspondence in the various transactions involved, extending over some seven years, is lengthy. We will endeavor to state, in substance, as much of it as we deem necessary, omitting much, and copying therefrom only when we deem it necessary.

On December 21, 1921, W. H. Abrams, general agent for plaintiffs, executed an option contract to J. R. Burns and W. M. King, to purchase certain lands in El Paso and Hudspeth counties, the Texas & Pacific Railway Company being the original grantee. The option was to purchase all or not less than 50,000 acres of land; the consideration paid at that time was $500, and to be forfeited if a less acreage was purchased under the conditions stated; the purchase was to be made on or before one year from date; should the purchase be made, the $500 to be applied on first cash payment; the purchase price was $5 per acre on terms stated, the unpaid balance to be secured by notes each for one-ninth of purchase price and maturing in one to ten years, respectively, the lands to be included in one deed; in case of failure to purchase, the offer to sell to become void and automatically canceled; the lands offered for sale in the option are stated; the option was extended to the 21st of February, 1923, on additional payment of $500, same to be applied on first payment.

Omitting some telegrams between the parties sending propositions, on April 26th, W. H. Abrams, for plaintiffs, accepted defendant's proposition, thereby agreeing to extension of options to purchase on receipt "immediately of $2,000.00 and $2,000.00 each month until we are in position to drill and exercise option, all money to be retained by you unless option finally consummated," defendants "to confirm by letter your understanding of new agreement."

On May 25, 1923, defendants wrote W. H. Abrams substantially as follows: Are inclosing check $2,000 for renewal of purchase and lease option to June 25, 1923; do not describe them minutely; it relates to option to purchase over 100,000 acres and to lease 5 sections in block 80, township 2, El Paso county; in making out extension, made them both read to the time above stated, with privilege of renewing same from month to month for six months; all money so paid to be deducted from purchase price of the purchase option, and, if option finally consummated, these payments, as others heretofore made, to be deducted from the first payment of 50¢ per acre. "Of course if we start the well (a drilling proposition for gas and oil) on the five sections under lease at any time previous to the six months and complete same, our obligations will have been completed so far as the lease is concerned; we are willing to leave it in your hands to write the extensions in such way that it will be agreeable to us."

On October 5, 1923, plaintiffs acting through W. H. Abrams, executed an "extension of option to purchase and extension of time for drilling under oil lease." After stating several facts not made conditions, the "option to purchase" and the date for commencing active drilling under the said oil and gas lease were extended to March 1, 1924. The instruments recite that it is further agreed that all moneys paid under the extension agreement as well as all moneys heretofore paid on certain options shall be applied in part payment of the first or cash payment on lands purchased under said option to purchase, "provided said purchase is made before the expiration of this agreement; oth-

erwise, all payments heretofore made and hereafter made under said option to purchase or this agreement become forfeited." The above executed in duplicate. The above was accepted by Burns & King.

On March 31, 1924, plaintiffs, acting through W. H. Abrams, executed to Burns & King, individually, in consideration of $500 paid, an extension of "said option to purchase," and noting some exceptions as to lands (apparently not material here), and the date to commence drilling under oil and gas lease, to June 1, 1924, with added agreement that all moneys paid to be applied on lands purchased, with condition as in last above referred to instrument. Burns & King accepted.

On the 22d of September, 1924, plaintiffs, acting through W. H. Abrams, executed to Burns & King, individually, extension of option to purchase, to January 1, 1925, with exceptions as to lands and conditions similar to first above-cited instrument.

Acceptance of Burns & King noted on the instrument.

On May 19, 1925, plaintiffs, through W. H. Abrams, by instrument of that date, for a consideration of $1,000 paid, extended option to purchase (excepting lands as above) to September 30, 1925, reciting agreement as above that all moneys paid on option shall be applied in part payment of first cash payment on lands purchased under option to purchase, with provision as above that purchase is made before expiration of option agreement, all payments made under option to purchase becomes forfeited.

Acceptance of Burns & King is noted on instrument. At this time in the transactions between the parties it is shown by the evidence that $6,000 had been paid to plaintiffs on the options to purchase the 50,000 acres of land, but that Burns & King had not exercised the option to buy any part of the lands. The lands involved in the option are none of the lands involved in this suit. The additional $1,200 of the $7,200 was paid into plaintiff's office on October 10, 1925, in a proposed purchase of Wallace Collins. Without quoting at length from the evidence, it shows that on July 10, 1926, several months after the time for the exercise of the option to purchase by Wallace Collins, Burns & King wrote to Mr. Abrams that they had received no information from Collins in regard to the option which had been given him, and offering to buy the Collins lands if Abrams would treat the $7,200 already received by him on prior options as cash payment, and allow them (Burns & King) to make nine equal annual notes for the balance of the purchase money. To that, Mr. Abrams replied on July 21, 1926, acknowledging receipt of the Burns & King letter (July 10, 1926), advising him that there was no prospect of Collins going through with

the deal covering the lands (blocks Nos. 76 and 77, Hudspeth county); he inclosed a letter to Collins advising that the deal was off, requested a return of the two abstracts and the nine notes forwarded for their signature; then follows:

"With reference to your suggestion that we issue deed covering the above lands to some other purchaser whom you may be able to find—taking first payment the $7,200.00 already in our hands, beg to advise that I cannot do this, and any negotiations for the purchase of these lands by you or others must be started on an entirely fresh basis. I have no idea of making you forfeit the $7,200.00 already paid us. and will be glad to credit that amount on previous sales to you which are badly in arrears. I fully appreciate the effort you have made to get development in El Paso County, but I do not feel that I would be justified in permitting you to retain what is virtually an option on such a large body of land without receiving more substantial cash payments from time to time than you have been able in the past to make."

To the above offer to allow the $7,200 to be paid as a credit on previous sales, Burns & King on September 29, 1926, wrote H. J. Abrams, son and successor to W. H. Abrams, as general manager of plaintiffs' lands, asking that part of the $7,200 be applied on unpaid rentals on certain lands, sections 17 and 19, block 79, township 1, and that the balance of the $7,200 be left for later adjustment.

The above, not an acceptance but an offer, was answered by H. J. Abrams on October 5, 1926, stating that, in line with a previous letter, oil leases 1014 and 1015 were canceled, with the exception of 300 acres on which the rental was paid by the assignees of Burns & King, and further said:

"I would suggest that the option money above referred to (the $7200.00) be applied to the longest past due land notes, which we hold against you, which have not been assumed by others. From your letter of the 29th, ult., it would appear that some of the notes cover both lands which you have sold, as well as lands you have retained. I suggest that the option money be applied to Sale No. 3794, Notes 1524 and 1525; Sale No. 3795, Notes 1527 and 1528; and Sale No. 3812, Notes 1551, 1552 and 1553."

In the letter of September 29, 1926, from Burns & King to Mr. H. J. Abrams, now the general agent of plaintiffs, and referred to by H. J. Abrams, occurs the following:

"After having suffered such a very financial loss in El Paso County, of which you are very familiar, and in order to adjust different matters which we hope will ultimately put us in position to make further developments, we have deeded different properties purchased from you as hereinafter described, the purchasers in each case assuming and agreeing to pay the amounts due you.

"Sec. 33, Blk. 80, Tsp. 1. Sold to R. L. Watt, and associates, 1471 Park ave., Riverside, Cal.

"Secs. 5 and 31, Blk. 79, sold to Allister B.

Campbell, and Tsp. 1, W. D. Ammett. These parties can be reached by addressing Mr. Campbell, First National Bank Bldg., El Paso, Texas.

"We also wish to again refer to secs. 7, 17 and 19 Blk. 79, Tsp. 1, upon which we have a lease, and upon which the rentals have not been paid to date, and inasmuch as you have already written us that it was perfectly agreeable to you to credit the $7200.00 we had paid on options, the same to apply on some of our other accounts, so wish you would apply whatever amount is necessary to pay the back rentals on these three sections, leaving the balance of the $7200.00 to be adjusted on other matters at a later date.

"If you will kindly refer to Sec. 19, herein referred to, you will find that before your father (W. H. Abrams) died the northwest and southeast quarters were assigned to other people; they at that time paying rental on these two quarters, but as we understand, they have not since kept same up, and if not, we would like to pay on the entire sections as herein outlined, as it is very important to us to control all these three sections if possible in order that we may work out our plans for some further development which is greatly to your interest, as well as to our own. If they have not kept up their rent on these two particular quarters we would very much prefer that you make out a new lease to us with the same rental and drilling conditions that existed in the old one; you, of course, charging us with the rental due. On the other hand, if they have kept up their rentals on these two quarter sections, simply let the old lease ride and charge us with whatever amount is necessary on the remaining two and one-half sections. We are working desperately to get all matters adjusted and get further development in the field, and our next move will be to in some way make satisfactory adjustments on the land covered by your deed, No. 3832, and just as soon as we can get this in·something like tangible shape, our Mr. Burns will make a personal trip to Dallas and take this up with you personally. Again referring to Sects. 7, 17 and 19, we wish you would write us by return mail advising that our suggestion meets with your approval, as this is now the key-note to the strenuous efforts that we are putting forth."

The evidence covers some 145 pages of the record, and, because of its volume, we have omitted practically all of the parol evidence and much of the letters and telegrams.

Defendants requested the court to instruct the jury practically as indicated in the propositions.

As we view the record the entire amount of the $7,200 was paid to plaintiffs as consideration for option to purchase 50,000 or more of certain designated lands belonging to plaintiffs; the option to purchase continued by agreement from time through the years, and under express agreement that, unless defendants exercised the option to purchase before the option expired, the amount paid became forfeited, and, only in the event defendants exercised the right to buy, the consideration was to become a part of the purchase price. The record seems clear that de-

fendants at no time purchased any of the lands for which the option was given.

Defendants refer to a letter of Abrams in which he said that he had no idea of forfeiting the $7,200 already paid, and would be glad to credit that amount on previous sales then in arrears, but the proposed disposition of the option money was never accepted by defendants, but, on the contrary, they made a counter proposition of the disposition to be made of it which was never accepted by Abrams, but stated that the leases had been canceled for nonpayment of rentals. Later, on October 5, 1926, Abrams suggested, and which we construe as a proposition, that the option money be applied on the longest past-due notes, not assumed by others, indicating the sale numbers and notes to which it should be applied. But, instead of accepting, defendants on October 27th wrote Abrams asking that the option money be applied to payments in full of sale No. 3794, and part to payment in full sections 3 and 15 out of the four sections covered by sale No. 3812, and the remainder, if any, applied to indebtedness against sections 5 and 9 out of sale No. 3812. To the defendants' proposition the record shows no acceptance.

The trial court was of the opinion that, since the Wallace Collins deal did not materialize, the $1,200 cash payment on that sale was a credit to which defendants were entitled, since the evidence of the forfeiture of that sale was sustained only by memorandum made by plaintiff Kloh for the benefit of W. H. Abrams, and since that credit, when allowed on sale No. 3794, as requested by defendants, would liquidate the indebtedness against section 15, block 80, township 1, under sale No. 3790, the court awarded judgment for defendants as to that land.

Under the several option contracts we have undertaken to set out above, and the repeated failures of defendants to exercise the options there given to purchase, and the contract expressly providing that, on a failure to purchase, the money paid for the option and the several extensions would automatically forfeit to plaintiffs, the forfeited option money became the property of plaintiffs. Plaintiffs had the right to propose and make such disposition of it as they saw fit, and on their own terms. Had the plaintiffs accepted to make the disposition of the money suggested by defendants it would have been a gift. The court did not have the right to apply the money on defendants' debt without plaintiffs' consent. But assuming that, had plaintiffs accepted to apply the option money as defendants proposed or requested, such acceptance would have constituted an agreement, the record does not show there was an acceptance at any time by the parties on any suggestion, request, or proposition made as to the disposition of the money. On no prop-

osition or counter proposition did the minds of the parties meet.

■ An acceptance to bind the offerer must be unequivocal and unconditional, and, if it vary the terms offered it is a rejection of the offer, becomes itself a proposition, and if not accepted on the new or changed terms offered, the proposed agreement is at an end. Martin Weiss Co. v. Schwartz (Tex. Civ. App.) 295 S. W. 197; Flomerfelt et al. v. Hume et al., 11 Tex. Civ. App. 30, 31 S. W. 679; Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822; Edgeworth v. Talerico (Tex. Civ. App.) 95 S. W. 677.

■ The record does not show an acceptance of the above suggestion or offer, of plaintiffs, but rather Burns & King on October 27, 1926, wrote Mr. Abrams suggesting that a portion of the option money be applied to cover sale No. 3794, and send a release showing the entire amount paid, and stating that they had sold sections 5 and 9, portions of land covered by sale No. 3812, leaving sections 3 and 15 still in their name, and asking that, of whatever is remaining after clearing up sale No. 3794, the necessary amount be applied to give clear title to sections 3 and 15, and that there still would be a credit of some hundreds of dollars, and asking that such be applied against sections 5 and 9, theretofore referred to.

The last above ended the correspondence. The record does not disclose that plaintiffs accepted the suggestion.

Since sections 3, 5, 9, and 15, in sale No. 3812, were conveyed by one deed reserving a vendor's lien on all four sections as security for the payment of all the notes for the deferred payments, defendants would not have the right, we think, to apply any portion of the option money, even if they had been entitled to a credit therefrom, to a satisfaction of the entire indebtedness against sections 3 and 15, without the consent of plaintiffs, the holders of the notes. The court was not in error in refusing to give defendants' requested charge No. 2.

■ It appears from defendants' bill of exceptions No. 2 that plaintiffs had not introduced their title papers to the lands involved in the suit at the close of the evidence, and the plaintiffs, desiring to reopen the case for the purpose of introducing their title papers, agreed with counsel for defendants that the case might be reopened for that purpose as to plaintiffs, and that defendants should have the privilege of more fully cross-examining the witness P. B. Best, for many years chief clerk in the general land office of W. H. Abrams, and having in charge the lands involved in the suit and cognizant in a general way with the transactions between plaintiffs and defendants involved in this suit, and Best, having previously testified on the trial and the only witness introduced by plaintiffs in addition to their written and documentary evidence. Plaintiffs introduced their title papers. Counsel for plaintiffs made no objection to a further cross-examination of witness Best by defendants, and so stated to the court. The court hesitated to permit a further cross-examination of Best, and stated that only five minutes would be allowed for such cross-examination. Counsel presented to the court a list of the questions they desired to propound to the witness, and stated that at least half an hour would be required for such cross-examination. The court, over defendants' objections, refused to permit a further cross-examination of the witness. The court qualified the bill of exceptions with the statement that defendants, before they closed their case, had already cross-examined the witness fully, and had been allowed the utmost latitude to that end, and that the court was not apprised of the agreement between counsel until after the introduction of the title papers by plaintiffs. That the introduction of the title papers brought in no new matter which rendered the evidence sought to be elicited from the witness Best necessary, nor did the same require any additional examination.

We have examined the questions upon which defendants desired to re-examine the witness with reference to the facts and issues presented, and have concluded that, had the witness answered such of them as might properly be answered favorably to defendants' contention, such answers would not, of themselves, have required a submission of any issue to the jury by reason of such answers. Some of the answers might have appealed to Mr. Abrams to further extend the time of payment of long past overdue notes, but not as a matter of right without the consent of Mr. Abrams or the plaintiffs. As we view it, the introduction of the title papers showing title in plaintiffs did not change the status of the case in the least, nor prejudice the defendants, nor place them in a different position. Nor would the evidence, as shown by the bill of exceptions, under the plea of not guilty, have shown that the suit was prematurely brought, or raise the issue of estoppel or a denial of judgment in favor of plaintiffs, as insisted by defendants. The record shows that plaintiffs were the vendors of the lands and the defendants were the contracting purchasers, as shown by the undisputed evidence. The notes against section 15, block 80, township 1, involved in sale No. 3794, and notes against sections 3, 5, 9, and 15, involved in sale No. 3812, and notes against section 31, block 79, township 1, involved in sale No. 3819, had been shown in evidence, which notes and deed described the lands conveyed, and each specified that a vendor's lien was retained by plaintiffs as security for their payment; the notes were signed by defendants, and the deeds offered in evidence in connection therewith, describing the notes and showing the reservation of the lien to secure pay-

ment, contained all the proof necessary to show that the superior title to the lands was in plaintiffs.

We understand the rule to be that a plaintiff need not prove title in himself from the sovereignty of the soil, where it appears that defendant's title or claim emanated from the vendor's lien deed executed by the plaintiff. In such case the plaintiff is not required to deraign title beyond himself as a common source. Organ v. Maxwell (Tex. Civ. App.) 140 S. W. 255 (writ of error denied); Stegall v. Huff, 54 Tex. 197; Custard v. Musgrove, 47 Tex. 219; Wilson v. Palmer, 18 Tex. 592.

The refusal of the court to permit a further re-examination of the witness on the questions suggested in the bill of exceptions does not, in our judgment, present reversible error.

Error is assigned to the action of the court in instructing the verdict for plaintiffs because the chain of title introduced by plaintiffs upon their trespass to try title count did not show title to all the lands described in the petition to be in plaintiffs; and for that reason it was error to enter judgment for H. J. Abrams, he not being a party to the suit.

Under the above contention it is insisted that the record shows that some part of each tract of land sued for by plaintiffs is vested in H. J. Abrams, not a party herein, but a stranger to the suit. Also that it is shown by the judgment that plaintiff W. Forbes Morgan was suing, not for himself, but for and on behalf of H. J. Abrams; the said Abrams not being mentioned in any of the pleadings nor the evidence or order of the court as a party at interest in any of the lands involved in the suit.

The record shows that the deed from W. Forbes Morgan to H. J. Abrams was filed pendente lite, conveying all of his interest in the lands involved in this suit, and in the promissory notes given by the several vendors in part payment therefor, and in the vendor's lien retained to secure the payment of said notes, the interest theretofore owned by W. Forbes Morgan by the deed passed to H. J. Abrams immediately upon its delivery.

An assignment pendente lite does not render the assignee a necessary party. The action may be continued in the name of the assignor. This suit was instituted on February 2, 1927, and the conveyance from Morgan to Abrams was executed on July 5, 1927. A conveyance pendente lite does not affect the result of the suit when the grantee, as here, is not made a party either by amendment or intervention. In order to have availed themselves of any question growing out of an outstanding title, it should be made to appear that the conveyance from Morgan to Abrams was executed before the institution of the suit. Mealy v. Lipp, 91 Tex. 182, 42 S. W. 544.

However, it is a well-established rule that the other plaintiffs, tenants in common with Morgan, may recover land in a suit in trespass to try title against persons having no title, each tenant in common having the same right of possession and enjoyment as every other one. Pilcher v. Kirk, 60 Tex. 162; Telfener v. Dollard, 70 Tex. 139, 7 S. W. 847; Sowers v. Peterson, 59 Tex. 217; Contreras v. Haynes, 61 Tex. 103.

Defendants suggest that the case should be reversed and remanded because the trial court should have ordered a foreclosure upon the vendor's liens securing said notes as against said lands instead of awarding judgment for title to plaintiffs.

To have a foreclosure of the vendor's lien it would not be necessary to reverse and remand the case. If the trial court should have ordered a foreclosure of the vendor's liens, it would be the duty of this court to enter such judgment as the trial court should have entered in the three sales and ordering the sale of the lands with a deficiency judgment for plaintiffs in the event the lands on foreclosure do not sell for enough to satisfy the judgment. The only sales involved in this suit are the four sections involved in sale No. 3812, the one section involved in sale No. 3819, and the 38 sections involved in sale No. 3832. We need not state the amounts due on the notes at the time of the trial or at this time, though the amounts can be readily computed from the record, but it might be safely stated the amount due far exceeds the amount for which plaintiffs sold the lands to defendants. Defendants do not ask that a foreclosure of the vendor's liens be had, nor do they offer to pay any of the notes or interest due on any of the notes.

Under the undisputed facts in this case, will the action of trespass to try title lie?

The plaintiffs are the common source of title. Plaintiffs have the legal title, and the defendants the equitable title, the right of redemption. In Stevens v. Reik (Tex. Civ. App.) 247 S. W. 627, we had occasion to consider a question very similar to the one presented here. As sustaining the holding in that case we referred to Estes v. Browning, 11 Tex. 246, 60 Am. Dec. 238; Walker v. Emerson, 20 Tex. 707, 711, 73 Am. Dec. 207; Keys v. Mason, 44 Tex. 140; Kirby v. Cartwright, 48 Tex. Civ. App. 8, 106 S. W. 742, and cases cited. We need not review the case, but refer to it and the cases there used as sustaining the view that the action of trespass to try title will lie under the facts of the present case.

We have found no reversible error, and the case is affirmed.